408 P.2d 165

**J. I. CASE CREDIT CORPORATION, a corporation, Plaintiff-Appellant,**

**v.**

**Max W. ANDREASON, Defendant-Respondent, Third-Party Plaintiff,**

**v.**

**Lowell TITENSOR, dba Lewiston Implement Co. and Valley Implement Co. and J. I. Case Co., Third-Party Defendants-Appellants.**

No. 9576.

Supreme Court of Idaho.

Nov. 8, 1965.

As Modified on Denial of Rehearing Dec. 7, 1965.

**14**

Ben B. Johnson, Preston, Ballif & Ballif, Provo, Utah, for appellant.

Gee, Hargraves & Armstrong, Pocatello, for respondent.

**16**

McQUADE, Chief Justice.

This was a case tried before the court without a jury.

In June 1960 Max Andreason, defendant-respondent, sometimes referred to herein as the buyer, discussed the purchase of a self-propelled combine designed to harvest grain on hilly terrain with a salesman of third-party defendant-appellant L. C. Titensor, doing business as Lewiston Implement Company, sometimes referred to herein as the seller. The discussions were held both at the seller's place of business and in some of the fields where the buyer did his custom cutting. Andreason explained the purpose for which he needed the machine; namely, the custom cutting of grain on the sides of hills, and was assured by Titensor that the machine, manufactured by J. I. Case Company, was capable of cutting and saving grain on sidehills, was trouble-free and would be suitable for the buyer's needs. Relying upon these representations, Andreason purchased the machine shortly thereafter by trading in a Massey-Harris combine, paying some cash and executing a conditional sales agreement and note. A printed order form constituted the contract

between the parties. Plaintiff-appellant J. I. Case Credit Corporation is holder of Andreason's conditional sales note.

Within one week of delivery of the machine, the buyer experienced the first of what proved to be a long series of major difficulties. On the first breakdown Titensor was notified immediately and he dispatched a repairman to correct the trouble. Other breakdowns occurred some 40 or 50 times during the two harvesting seasons of 1960 and 1961. On some occasions three days were required to repair the machine. The buyer repeatedly expressed to Titensor his dissatisfaction with the combine. Because of the Case machine's faulty operation, considerable grain was lost and some of Andreason's customers refused to allow him to harvest their fields with it; others terminated their harvesting agreements with Andreason. Upon being advised by the seller's mechanic that the combine could not be further repaired and that the defects could not be corrected, the buyer refused to make additional payments on the note held by Case Credit Corporation and the machine was returned to the seller during 1962.

In May 1962 the buyer wrote to J. I. Case Company and informed it of the difficulties he had been experiencing with the machine and that it was unsatisfactory. This was the first notice received by the manufacturer from the buyer.

J. I. Case Credit Corporation commenced the action against Andreason to recover the unpaid portion of the note. Andreason counterclaimed and cross-claimed against third-party defendants Titensor and J. I. Case Company for breach of warranty. The trial court found that there was a waiver of the warranty's notice requirement by J. I. Case Company and entered judgment for Andreason against J. I. Case Company, J. I. Case Credit Corporation and Lowell Titensor in the sum of $4,466.34. It also found that Case Credit Corporation was not entitled to collect the unpaid portion of the note from Andreason. J. I. Case Company, J. I. Case Credit Corporation and Titensor appeal from that judgment.

On the reverse side of the "order-form" contract betwen the buyer and the seller is the warranty by J. I. Case Company.[1] The warranty required immediate

---

1. "ALL NEW CASE PRODUCTS· ARE SOLD SUBJECT TO THE FOLLOW-ING WARRANTY
"J. I. Case Company, hereinafter called 'Company,' warrants each new Case product (except attachments, devices or equipment not made by it and which may be warranted by the respective makers but are not warranted by the Company):

"1. To be well made of good material and to be durable with good care.
"(a) If any part made by the Company shall fail from defect in material within six months after first use, and, within ten days after such failure, written notice is given to the Dealer from or through whom said part was purchased, it will be replaced free upon presentation at the

notice to Case if the dealer was unable to repair the machine within two days. Case was not expressly notified by the buyer of the machine's defects until well over 18 months after its purchase. Case did not have a reasonable opportunity to inspect, repair or replace the machine as provided by the warranty. There is no evidence in the record to support the trial judge's finding that Case waived the notice requirement. By terms of the warranty the buyer was obligated to notify the seller, and if the defect was not satisfactorily repaired, he was then required to notify the manufacturer, Case. By notifying the seller, the buyer cannot assert that Case had constructive notice of the defects because he had notified the seller. To support its conclusion that Case waived the notice requirement, the trial court found that "A representative of J. I. Case Co. called on defendant [Andreason] and work was done on the machine." However, this visit did not take place until June 1962, two years after the

Company's branch house having jurisdiction over the dealer's territory subject to the option of the Company to repair the same.

\* \* \* \* \*

"2. If properly set up, adjusted, and operated by competent persons, to be capable under ordinary conditions of doing the work for which it is designed.

"(a) If upon operation by the purchaser in the manner aforesaid for two days any Case product shall fail to fulfill such warranty, written notice thereof shall be given at once to the dealer from or through whom the same was purchased. If the dealer does not remedy the defect within two days after notification, then immediate written notice of the defect particularly describing the same, specifying the time of discovery thereof and the time of notification to the dealer shall be given by registered letter to J. I. Case Company at its branch house having jurisdiction over such dealer's territory, after which notice reasonable time shall be given to the Company to either send a competent person to remedy the defect or suggest by letter the remedy of the defect, if it be of such a nature. If the product is found by the Company to be defective in material or workmanship, then the Company will see to it that the defect is remedied, otherwise, purchaser agrees to pay the expenses incurred by the Company with reference thereto and in any event purchaser agrees to render necessary and friendly assistance without compensation.

"(b) If, after such notice and opportunity to remedy the difficulty, the Company fails to make the product fulfill the warranty, the part that fails shall be returned immediately by the purchaser, free of charge, to the place from whence it was received and the Company notified thereof at its Branch House aforesaid, whereupon the Company shall have the option to furnish another machine or implement or part in place of the one so returned which shall fulfill the warranty, or to cause to be returned the money and notes or proportionate part thereof received for such machine or implement or part and no further claim shall be made.

"(c) Failure to give notice, or the use of any Case product after the two (2) day limit aforesaid without giving such notice, or failure to return such product or part as aforesaid shall be conclusive evidence of due fulfillment of the warranty.

"3. There is no express, implied or statutory warranty by the Company of any nature whatsoever other than or different from the conditional warranty aforesaid."

sale, and cannot be construed to imply a waiver of prompt notice.

 The express warranty made by Titensor to Andreason was that the machine would be suitable for sidehill combining, would save grain and be trouble-free and became a part of the agreement between those parties. See I.C. § 64–112. Also, Andreason having advised Titensor before the sale as to the particular purpose for which the machine would be used and Andreason having relied upon Titensor's knowledge as a dealer, an implied warranty by the seller is created that the goods shall be reasonably fit for such purpose. I.C. § 64–115(1).

 Since the written warranty ran from Case rather than Titensor, the two-day notice provision does not apply insofar as the seller's express and implied warranties are concerned; the buyer had a reasonable time to notify the seller that the machine was defective and unsuitable. The evidence is that the first major breakdown occurred approximately one week after delivery, at which time the machine was first used for sidehill cutting. The seller was notified immediately and a mechanic was sent to repair the machine. Thus, notice of the defect was given to the seller within a reasonable time. 77 C.J.S. Sales § 339 b.

 Titensor asserts that the provision of the contract which reads:

"The undersigned hereby acknowledge receipt of a copy of this order, which together with the warranty provision on the back hereof is understood to be the entire contract between us."

limits its liability to the contract itself. Titensor argues that under I.C. § 64–601,[2] the parties modified and negated statutory implied and express warranties, citing the rules established in Commercial Credit Equipment Corp. v. Knowlton, 86 Idaho 314, 386 P.2d 370 (1963), and United States ex rel. and for Benefit of Administrator of Federal Housing Administration v. Troy-Parisian, Inc., 115 F.2d 224 (9th Cir. 1940), cert. den., 312 U.S. 699, 61 S.Ct. 739, 85 L.Ed. 1133. Both cases are distinguishable from the instant case, for in each the question involved the validity of an *explicit* provision whereby the buyer agreed not to assert defenses against a named third-party assignee of the buyer's promissory note. The buyers in each of those two cases contemplated that the financing would be arranged through the named third parties and, in order to facilitate such financing,

2. "64–601. Variation of implied obligations.—Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement or by the course of dealing between the parties, or by custom, if the custom be such as to bind both parties to the contract or the sale."

they agreed to forego any defenses they might have against the seller *in an action brought by the financers on the note.* Those provisos have no relation to the clause contained herein.

In the Knowlton case, supra, there was also a provision relating to warranties [3] which is somewhat similar, yet significantly different from the one in issue here. However, that question in the Knowlton case became moot because the jury had found in favor of the seller and thus the court had no reason to inquire into the effect of the provision in relation to the facts therein presented.

■■■ Contractual disclaimers and repudiations of liability for breach of an express oral warranty made by a seller during negotiations with the buyer should be construed strictly against the seller and such limitations or repudiations will be enforced only when the buyer is aware of such restrictions or fairly can be charged with constructive knowledge thereof. When a seller induces a buyer to purchase an article by warranting its quality and fitness, any attempt to disavow or restrict liability by the seller must be so explicit and specific that the buyer is made aware of the seller's recantation of his promises and attestations.

Vague and general language that the writing is "the entire contract between us" will not suffice to exonerate the seller for breach of an express oral warranty made during negotiations. Grey v. Hayes-Sammons Chemical Co., 310 F.2d 291 (5th Cir. 1962); Burr v. Sherwin Williams Co., 42 Cal.2d 682, 268 P.2d 1041 (1954); Wilson v. Eargle, 98 Ga.App. 241, 105 S.E.2d 474 (1958); McPeak v. Boker, 236 Minn. 420, 53 N.W.2d 130 (1952); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960).

■■■ As to J. I. Case Credit Corporation, there are no grounds upon which it is liable to Andreason for the seller's breach of warranty. It was not a party to the contract between Titensor and Andreason and made no warranties regarding the machine. It was merely the holder, by way of assignment, of the conditional sales agreement and note executed by Andreason to Titensor.

■■■ Appellants cite as error the trial court's rescinding of the contract and awarding to the buyer all cash payments made plus the fair value of the machine traded in as a down payment on the Case combine. It is urged that the buyer should

3. " 'This agreement constitutes the entire contract between the parties, and shall be binding upon and inure to the benefit of the parties and their respective heirs, executors, administrators, successors and assigns. *No warranties, express or implied, and no representations, promises or statements have been made by seller unless endorsed hereon in writing. * * * '*" (Emphasis supplied) 86 Idaho at 320, 386 P.2d at 374.

reimburse the seller for the use of the machine and the profits derived from such use. This assignment of error is not supported by the record. I.C. § 64–507(d) provides the remedy to a buyer for breach of warranty by the seller:

"Remedies for breach of warranty.—1. Where there is a breach of warranty by the seller, the buyer may, at his election:

\* \* \* \* \* \*

"d. Rescind the contract to sell or the sale and \* \* \* if the goods have already been received return them or offer to return them to the seller and recover the price or any part thereof which has been paid."

In addition, no issue for a setoff or an accounting for profits was made by the pleadings or at the trial and no evidence was introduced to establish the reasonable value for the use of the machine or profits derived from the use thereof.

Furthermore, the evidence indicates that Andreason retained the machine for as long as he did because of the continued reassurances of Titensor that the machine would work properly. Andreason repeatedly informed Titensor of his dissatisfaction with the combine and the machine never worked properly for an extended period of time. There was evidence that the machine did not work continuously for a week without a major breakdown. Titensor did not offer to replace the combine with another. The seller may not complain of the buyer's cooperation while the buyer is retaining possession thereof at the seller's urging.

Andreason traded a Massey-Harris combine as a down payment and paid $2,466.34 in cash installments; he later repurchased the Massey-Harris from Titensor for $2,000.00, which amount he is entitled to recover from Titensor. Andreason is also entitled to recover from J. I. Case Credit Corporation or Titensor the monies which he paid to J. I. Case Credit Corporation on the note. And he is entitled to recover from Titensor any monies paid thereto pursuant to the purchase agreement and note.

The judgment against J. I. Case Company is reversed. The remainder of the judgment, as modified herein, is affirmed.

The cause is remanded to the trial court for further proceedings consistent with the views herein expressed.

J. I. Case Company and J. I. Case Credit Corporation are awarded their costs; respondent Andreason is awarded his costs against Titensor.

McFADDEN, TAYLOR, SMITH and KNUDSON, JJ., concur.