No. 23358.

CHEROKEE INVESTMENT CO., A CORPORATION, D/B/A AMER-
ICAN WATER PRODUCTS CO. *v.* ROY E. VOILES AND MAE
VOILES.
(443 P.2d 727)

Decided July 15, 1968.

GARY L. POLIDORI, for plaintiff in error.

No appearance for defendants in error.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

CHEROKEE Investment Company brings this writ of error directed to a judgment entered against it by the District Court of Arapahoe County for breach of an implied warranty in the sale of a water conditioner to defendants in error. Plaintiff in error will hereafter be referred to as Cherokee and defendants in error, Roy E. Voiles and Mae Voiles, will be referred to as plaintiffs.

Plaintiffs sued Cherokee, the dealer, and Hydro-Matic Corporation, the manufacturer, for damages for breach of express and implied warranties, alleging that a water conditioner purchased from Cherokee was defective. Hydro-Matic Corporation did not answer or otherwise appear in the suit, and default judgment was entered against it for $599, the replacement cost of the conditioner, for breach of its express warranty to plaintiffs. The judgment against Cherokee was for $903.55, the replacement cost plus the interest and carrying charges incurred by plaintiffs under a "modernization note and mortgage" executed in Cherokee's favor at the time of the sale. This note and mortgage was subsequently negotiated to the Englewood Colorado Industrial Bank, and was involved in this litigation only as the measure of plaintiffs' damages.

The judgment against the manufacturer for breach of its express warranty to plaintiffs is not contested here. The judgment against Cherokee was for breach of an alleged implied warranty "that the water conditioner was fit for use in the residence of the plaintiffs."

Cherokee's principal contention on this writ of error is that the disclaimer clause in the sales agreement precludes any implied warranties in the sale. It further

contends that, if there was an implied warranty, there is insufficient evidence in the record either to establish a breach of the warranty, or to support the amount of damages awarded. Finding no merit to any of these arguments on the facts disclosed by this record, we affirm the judgment of the trial court.

## I.

The undisputed evidence here shows that this sale was initiated by a telephone call from Cherokee to the plaintiffs; that thereafter two sales representatives called at plaintiffs' home and conducted a demonstration designed to convince plaintiffs of their need for a water conditioner; and that after several hours of demonstration and discussion, plaintiffs signed the printed order form containing a purported disclaimer clause, along with a credit application form and the "modernization note and mortgage." The order form lists a total cash price of $599, but further provides: "Terms: 60 mos. at 14.97." Obviously, this order contemplated a time payment sale, but only the note and mortgage contains the amount which plaintiffs agreed to pay, i.e., $903.55. The note and mortgage also contains the only reference anywhere to a lien on plaintiffs' residence, although the order form provides that the conditioner is to be considered as a fixture annexed to the realty as soon as it is installed. It is evident that no one of these instruments contains all of the terms of sale agreed to by the parties.

There is no evidence whatever in the record that the disclaimer clause in question was called to plaintiffs' attention or that they understood it was intended to relieve Cherokee of liability. On the contrary, plaintiffs' uncontradicted testimony was that they were advised to call Cherokee if they had any trouble with the conditioner.

To place the matter in proper perspective, we point out that Cherokee concedes that under the circumstances of this case, ordinarily an implied warranty that

the conditioner was fit for the purpose for which it was purchased arises under the Uniform Sales Act, C.R.S. 1963, 121-1-15(1)(b). But it contends that the following provision of its printed order form, signed by the plaintiffs, relieves it of such a warranty:

"It is agreed that this equipment is purchased by me, subject to the Manufacturer's Warranty, and is the only Warranty either expressed or implied made under this order."

Cherokee contends that this clause is sufficient under the Uniform Sales Act, C.R.S. 1963, 121-1-71, to negative any implied warranties which the Sales Act might otherwise attach to the sale. This section provides:

"Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement * * *."

Cherokee argues that the disclaimer clause quoted above represents an "express agreement" by both parties that Cherokee would not be liable for any defects in the water conditioner purchased by plaintiffs. Although such an interpretation might be justified if this were a negotiated contract between a commercial seller and a commercial buyer, it is not appropriate to the type of sale disclosed by this record. *See* W. Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)*, 50 Minn. L.Rev. 791, 831-34 (1966); and W. Prosser, *The Assault Upon the Citadel (Strict Liability to the Consumer)*, 69 Yale L.J. 1099, 1133 (1960).

The Uniform Sales Act, in providing for an implied warranty of fitness for a particular purpose, announced a public policy adopted by the legislature to give buyers protection against sellers of unfit merchandise under certain conditions. In order to negative this declaration of public policy, the express agreement provided for in Section 71 of the Uniform Sales Act must be clear, unequivocal, and the result of a genuine agreement between the parties. Where sales are made under circumstances such as are present here, and there

is an attempt to negative an implied warranty of fitness by a broad general disclaimer, it must appear that the so-called disclaimer was clearly brought to the attention of the buyer and agreed to by him in order for this disclaimer to be effective.

In an analogous situation, this Court has held that a provision in a furniture storage receipt limiting the storage company's liability for stored goods is not enforceable against the bailor of the goods unless called to the bailor's attention, or unless it is shown that the bailor bargained for a reduced storage rate based on the limitation. *French v. Bekins Moving & Storage Co.,* 118 Colo. 424, 195 P.2d 968. This case is cited with approval in a leading case holding that disclaimer provisions in automobile sales contracts, similar to the one at issue here, do not negative implied warranties. *Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69. Courts in other jurisdictions have reached the same result we reach here, under the Uniform Sales Act provisions applicable here. *E.g., J. I. Case Credit Corp. v. Andreason,* 90 Idaho 12, 408 P.2d 165; *Sutter v. St. Clair Motors, Inc.,* 44 Ill. App. 2d 318, 194 N.E.2d 674; *State Farm Mutual Auto Ins. Co. v. Anderson-Weber, Inc.,* 252 Iowa 1289, 110 N.W.2d 449; *General Motors Corp. v. Dodson,* 47 Tenn. App. 438, 338 S.W.2d 655. *Yanish v. Fernandez,* 156 Colo. 225, 397 P.2d 881, cited by Cherokee, is a case involving the sale of a *used* car "as is," and has no application to the fact situation here.

II.

▇▇ We find the evidence here entirely sufficient to support the trial court's finding that Cherokee breached its implied warranty, in that the water conditioner purchased by plaintiffs "was not fit for use in the residence of plaintiffs."

The undisputed evidence shows that the malfunction of this water conditioner began within a week or two after it was purchased; that Cherokee sent a repairman

to plaintiffs' home to readjust the timing device; that about a month thereafter the conditioner again failed to function properly, this time discharging water on the floor. Plaintiffs disconnected the conditioner from the water supply and it has never been operated since that time. Plaintiffs again called Cherokee and a man who identified himself as a factory representative called at their home to examine the conditioner. He informed them that the timing unit was defective and would have to be replaced. No replacement unit was ever provided, either by the manufacturer or by Cherokee, although plaintiffs testified they called Cherokee's office several times after the "factory representative" had visited their home. The timing device and the pumps and valves attached to it were the only moving parts in the water conditioner.

This evidence establishes that the water conditioner never operated properly and became completely inoperative less than two months after it was purchased, and that no substantial effort was made by Cherokee to remedy the defects despite repeated requests by plaintiffs. We find this sufficient to support the holding of the trial court that Cherokee breached its implied warranty to plaintiffs.

### III.

Cherokee finally argues that the evidence does not support the amount of damages awarded, and that the damages were excessive.

The evidence shows that at the time of the sale plaintiffs executed a "note and mortgage" to Cherokee in the amount of $903.55, which became a lien on their residence, and that they had made all payments on this obligation as they became due. The note and mortgage was negotiated by Cherokee to a third party, and regardless of the outcome of this litigation, plaintiffs would remain obligated to make all future payments specified therein. There were no provisions in the note

by which the face amount would be reduced in the event of pre-payment.

■ Implicit in the trial court's award of damages in the full amount of the obligation is a finding that the water conditioner plaintiffs purchased was entirely worthless, and this finding is supported by the record. In these circumstances, the only way plaintiffs could be made whole is by awarding them the full amount of the obligation they undertook to pay at the time they purchased the water conditioner from Cherokee. Or, stated differently, the interest and carrying charges on the note and mortgage signed by plaintiffs at the time the sale was made were clearly consequential damages directly resulting from the breach of warranty. *See* C.R.S. 1963, 121-1-69(6).

■ Cherokee further argues that plaintiffs had a duty to mitigate their damages by attempting to replace the defective timer. However, there is nothing in the record to show that these timing devices were available on the open market, or from any source other than the defendants themselves. Under the circumstances, any duty plaintiffs may have had to mitigate their damages was fully discharged by their repeated efforts to persuade Cherokee to repair the conditioner.

■ Cherokee argues that the damages are excessive because plaintiffs, by recovering their full obligation while still retaining the inoperative water conditioner, were placed in a better position than they contracted for. This argument is not supported by the record, which is devoid of any evidence indicating that the water conditioner in its present condition had any salvage value. Nor has Cherokee expressed any desire, at any stage of these proceedings, to secure the return of the conditioner.

The judgment is affirmed.