487 P.2d 1127

**VALMONT–PACIFIC, INC., Plaintiff-Appellant,**

v.

**Leonard M. KELLEY, Jr., Defendant-Respondent.**

**No. 10550.**

Supreme Court of Idaho.

Aug. 5, 1971.

**374**

Kramer, Plankey & Meehl, Twin Falls, for plaintiff-appellant.

Herman Bedke, Burley, for defendant-respondent.

McQUADE, Chief Justice.

This action arises out of the sale of farm sprinkling equipment by Valmont-Pacific, Inc., (plaintiff-appellant) to Leonard M. Kelley, Jr., (defendant-respondent). Prior to December 1, 1966, appellant and respondent surveyed respondent's farm and entered into a contract of sale of a sprinkler system. It is contended by respondent, and the trial court found, that appellant's representatives assured respondent, prior to sale, that the system would work on respondent's lands.

On December 1, 1966, the parties executed a printed "Order Form and Sale's Contract" for the purchase of the system. Typed on the front of this printed form was the sentence, "This equipment warranted as NEW and to be modernized to 1966 standards at time of installation." The contract also explicitly included "installation supervision" by appellant. The printed form was signed by respondent. On the reverse side of the form was printed "TERMS AND PROVISIONS," which included the following:

"This order and sales contract form constitutes the entire agreement between the parties relative to this transaction.

Valmont-Pacific Inc. shall not be bound by any statement or promise made by any representative relative to this transaction which is not embodied herein. * * *

\* \* \* \* \* \*

"Seller and Valley Manufacturing Company of Valley, Nebraska, do hereby warrant any new equipment sold to be free from defects in materials and workmanship. *It is understood that no warranties, express or implied, of fitness or merchantability is made or arises with respect to used machines or equipment.* It is expressly understood that Seller and Valley Manufacturing Company of Valley, Nebraska, assume no liability for any incidental or consequential damages arising out of a breach of this contract, including any warranties arising therefrom, and that the obligations and liabilities of Seller and Valley Manufacturing Company of Valley, Nebraska, arising under this transaction, and the Purchaser's remedies shall be limited to repair or replacement, without charge F.O.B. Factory, of a defective part returned within one year from date of delivery of the Goods covered by this agreement." [Emphasis original]

Respondent paid a down payment of $5,-039.04, on a total purchase price of $35,-539.04. The balance of the purchase price was to be financed through Commercial Credit Equipment Corporation. To this end, on December 15, 1966, a second written agreement was entered into by the parties, setting out the terms of the sale and the schedule of payments. The reverse side of this agreement provided in part (in small print):

"This agreement constitutes the entire contract between the parties, and shall be binding upon and inure to the benefit of the parties * * *. No warranties, express or implied, and no representations, promises or statements have been made by seller unless endorsed hereon in writing."

Respondent made no payments under the December 15 agreement, though he did execute promissory notes to appellant in June and December of 1967, in exchange for appellant's payment of the installments due the finance company.

Appellant paid the installment due in March, 1968, and the balance due (accelerated by the finance company) in September of 1968.

It appears that the sprinkler system was never made to function properly on respondent's land. The system was installed on respondent's land during the period of March, 1967 to July 7, 1967. The first promissory note was executed while the system was being installed. The difficulty in getting the system to function properly was not in the machinery itself, but in the ability of appellant's personnel to install the machinery so that it would operate properly. In November, 1967, respondent told the appellant to fix the system or come and get the apparatus. Appellant's representative in late November attempted for the last time to put the system in operating order. Respondent testified this attempt was unsuccessful, and that the only response to a call by respondent to appellant's agent, asking when he would return to put the apparatus in functional order, was that he (appellant's agent) had other things to do. Appellant contends the system was not given a proper test after this last effort to make the apparatus function properly. However, there was no evidence that appellant's repairman ever got the system to function properly. The trial court explicitly found that the system never operated as contemplated. The second promissory note was executed after the November attempt to get the system to function properly. There was another request, in 1968, by respondent, this time to the finance company, to fix the equipment or come and get it. There was also an offer by appellant to fix the system in 1968, but respondent did not reply directly to appellant and no further efforts were made to put the system in

working order. Respondent testified he could not see why he should invest further money in the system if appellant could not make it function properly.

When appellant attempted to pick up the machinery in 1968, respondent initially refused to permit its removal, until he had a chance to ascertain who ordered the removal. That refusal was subsequently withdrawn, and the equipment was picked up and resold. In this action, consolidated by pre-trial order, appellant sought to recover a deficiency resulting from repossession, to enforce payment of the promissory notes, and to collect attorney's fees, respondent counterclaimed damages for lost crops, but he has not appealed the trial court's denial of recovery on the counterclaim.

Appellant contends the trial court erred in not giving effect to the express limitations of warranties and of the remedies for breach thereof found in the contracts between appellant and respondent.

This Court has previously stated that,

"Contractual disclaimers and repudiations of liability for breach of an express oral warranty made by a seller during negotiations with a buyer should be construed strictly against the seller * * *."[1]

The same rule should be applied when the oral warranty is reduced to writing. I. C. § 64-112, in effect at the time the contracts here in issue were negotiated and executed, provided:

"*Express warranty defined.*—Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon."

Appellant's exhibit H (the December 1, 1966 agreement) specifically provided "This equipment warranteed as NEW * * *," and further, that "Installation Supervision [was] included" in the contract by appellant. These contract terms, particularly

1. J. I. Case Credit Corporation v. Andreason, 90 Idaho 12, 20, 408 P.2d 165 (1965).

**376**

when viewed against the background of the conversations between appellant's agents and respondent leading to the purchase by respondent,[2] establish a warranty by appellant that the system would be made to function properly on respondent's property. There is substantial evidence that this warranty was breached, and the trial court so found. The finding will not be disturbed by this Court.[3]

The December 15th agreement, despite language on the reverse of the form to the contrary, cannot be said to have reduced the entire agreement of the parties to a single document, and therefore to supersede the December 1st agreement. Indeed, appellant clearly recognizes this point in its brief. Rather, the contract between the parties is set out in the December 1st and December 15th agreements read together. The disclaimer in the December 15th agreement,[4] therefore, cannot be said to abrogate the warranties expressed in the December 1 portion of the contract.

■ Appellant contends, however, that even if a warranty was breached, it was not so substantial as to justify rescission. This contention is without merit. The warranty that the apparatus could and would be made to function properly on respondent's property went to the very heart of the contract. The evidence shows that the irrigation system was complex and delicate. The difficulty of "timing" it properly is undisputed. If these difficulties could not be overcome by appellant's own servicemen, respondent could not be expected to make the system operate. The breach cannot be said to be incidental and subordinate to the main purpose of the contract, but

rather is sufficiently fundamental to the contract to defeat the objects of the parties, and therefore is sufficient to support rescission.[5]

■ Appellant contends that no rescission was pleaded or proved by the respondent, and indeed, that the evidence shows an affirmance of the agreement by respondent.

Appellant cites no authority for the proposition that rescission must be specifically pleaded in order that the facts giving rise thereto may constitute a valid defense to an action on the contract, and we have found none. The general rule appears to be to the contrary. It is thus stated in 17A C.J.S. Contracts § 434 (1963), that,

"[W]here a right to legal rescission, as distinct from rescission in equity, exists, one may effect a rescission by his own action and need not turn to the court * * *. The mode of rescission if any, prescribed by statute must be pursued. [Citing cases]."[6]

Idaho Code § 64–507 provided at times relevant herein,

"1. Where there is a breach of warranty by the seller, the buyer may, at his election:

\* \* \* \* \* \*

"d. Rescind the contract to sell or the sale and * * * if the goods have already been received return them *or offer to return them* to the seller * * *.

"4. Where the buyer is entitled to rescind the sale and elects to do so, *the buyer shall cease to be liable for the price upon returning or offering to return the goods.*" (Emphasis added).

2. Supported by respondent's uncontradicted testimony, the trial court found appellant's agents assured respondent the system could be made to work on respondent's farm.

3. Reardon v. Union Pacific R.R., 93 Idaho 833, 475 P.2d 370 (1970); Jones v. Big Lost River Irr. District, 93 Idaho 227, 459 P.2d 1009 (1969).

4. "No warranties, express or implied, and no representations, promises or statements

have been made by seller unless endorsed hereon in writing."

5. Robinson v. Spicer, 86 Idaho 138, 383 P.2d 844 (1963); Huggins v. Green Top Dairy Farms, 75 Idaho 436, 273 P.2d 399 (1954).

6. *See also,* 5A. Corbin, Corbin on Contracts, § 1105, at 568–569 (1964); 12 S. Williston, Williston on Contracts, § 1454A (3rd ed., 1970).

Under this statute, it is clear that the rescission as such occurred when the buyer (respondent) exercised his option to rescind by notifying appellant to come and get the apparatus, and refused to make further payments. The respondent was under no obligation to bring an action to rescind, and did not do so. The defense to appellant's action on the contract was the allegation of breach of warranty, explicitly set out in respondent's answer.[7] That is sufficient.

Appellant strongly argues, however, that the evidence does not support the conclusion that respondent elected to rescind the contracts but rather indicates that the respondent affirmed the contract. The rule is well established in Idaho that a breach of warranty may be waived and the contract affirmed by subsequent acts of the party invoking the breach.[8] Appellant focuses on the testimony which indicates that respondent's offers to return the goods were always equivocal, upon the execution of a note to cover the fall, 1967, installment in December of 1967, upon the respondent's treatment of the apparatus as an asset in a financial statement, and upon respondent's initial refusal to allow appellant's agents to repossess the apparatus. A close examination of each of these acts by respondent, in the context of the dealings between the parties, fails to reveal facts which constitute an affirmance of the contract by respondent.

The breach in this instance was not clearly established on a given date, nor could it have been. The nature of the warranty—that the irrigation system would be made to function properly on respondent's property—was such that a breach thereof could only be known after appellant had an opportunity to make the system function. Only when appellant could not do so, was a breach established. Respondent's statements, to the effect that if appellant could not make the system function it should take the apparatus back, in the context of the efforts to make the system function and avoid a breach of warranty, amount to an offer to return the goods to the seller within the terms of I.C. § 64–507. Both the execution of the note in December of 1967 and the inclusion of the apparatus in a financial statement in November of 1967 must also be viewed in this context. In late November of 1967, appellant's agents made efforts to put the apparatus in functional order, which appear to have been unsuccessful. Yet the financial statement was compiled "as of November 8, 1967," prior to the last efforts to repair the system. The December 1st note was signed under circumstances which also negative a waiver of the breach. Respondent testified that he had sent a personal check to the financing institution under the understanding that appellant would send respondent a check through the mail drawn on its accounts of like amount. However, when appellant's letter arrived, it notified respondent he

7. The respondent's answer alleged in part:

"I.

"That the Plaintiff, at the time it sold the said sprinkling system to the Defendant, represented and warranted to the Defendant that the same was in good working order and would properly operate by rotating in a complete circle from a pivot point. That, notwithstanding such representations and warrants, the sprinkling systems have failed to make one complete circle during the 1967 cropping season. Although repeated requests were made to the Plaintiff to place the sprinkling systems in good condition, the Plaintiff has failed and refused to make necessary adjustments or to correct and

replace defective parts and mechanisms, and the sprinkling system does not operate as warranted."

"II.

"The Plaintiff represented to the Defendant that it would sell and install a Valmont Sprinkling System on the property of the Defendant to adequately irrigate crops during the 1967 season and the Defendant relied upon such representation and the Plaintiff undertook to so install the said sprinkling system and that the same did not operate satisfactory."

8. C.I.T. Corporation v. Hess, 88 Idaho 1, 395 P.2d 471 (1964); Coleman v. Carter, 77 Idaho 210, 289 P.2d 932 (1955).

could pick up appellant's draft at appellant's attorney's office in Twin Falls, upon there executing a note for the amount of the check. Thus, at approximately the same time appellant's agent was attempting to get the system in functional order, respondent in good faith attempted to keep current in his payments to the financing institution, and thereby was forced to sign a note on December 1. On the other hand, respondent told appellant's agents in November of 1967 to come and get the apparatus if they could not make it work. When the finance company sent respondent his March, 1968 statement, he notified that company that he would pay nothing unless appellant repaired the apparatus.

While in most circumstances, an indication of intent by the purchaser to continue making payments after a breach became known would constitute an affirmance of the contract, we think the circumstance of the obvious good faith efforts of respondent to continue under the contract until it was clear that appellant could not make the system function properly (and thereby would be in breach of the warranty) sufficiently negative these acts of respondent that might otherwise amount to an affirmance of the contract. Nor, finally, can the momentary refusal of respondent to allow appellant's agents to remove the apparatus from respondent's premises be construed as an affirmance of the contract. The record indicates that this minor manifestation of control over the apparatus was only briefly asserted in order to ascertain the authority of the agents seeking to take the apparatus, and is in no way inconsistent with respondent's exercise of the power of rescission.

In short, while we subscribe to the general rule as to affirmance of a contract after material breach, i. e.,

> "[A] party * * * may waive the right to rescind by accepting benefits under the contract, or by electing to proceed with its performance, or by otherwise continuing to treat the contract as a subsisting obligation[,]" [9]

nevertheless, we hold that respondent's conduct in the circumstances of this case was insufficient to bar his reliance upon the breach as grounds for rescission.

The judgment of the district court is affirmed. Costs to respondent.

McFADDEN, DONALDSON, SHEPARD and SPEAR, JJ., concur.

---

9. 17A C.J.S. Contracts § 443 (1963).