RICHARD O'BRIEN COMPANIES, f/d/b/a Richard O'Brien Equipment Sales, Inc., and Du–All, Inc. a Colorado corporation; the Concrete Pumping Company, a Colorado corporation; Capital Equipment Company, a Texas corporation; and Capital Rentals Inc., a Texas corporation, Plaintiffs,

v.

CHALLENGE–COOK BROS., INCORPO-RATED, a California corporation, Defendant.

Civ. A. No. 86–K–1828.

United States District Court, D. Colorado.

Oct. 26, 1987.

Mark D. Gruskin and Jeanne M. Cochran, Swartz & Gruskin, Denver, Colo., for plaintiffs.

Michael E. Oldham, Johnson, Oldham, Sullivan & Angell, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is a diversity based products liability suit. It comes before me on defendant's motion for summary judgment.

Plaintiffs are involved in the purchase and provision of pumping services to the construction industry. Defendant manufactures and markets a concrete pump known as the 'Titan 3900'. In April, 1978, first plaintiff entered into a series of dealership agreements with defendant to sell the Titan pumps. First and second plaintiffs purchased thirty-nine of these pumps. They sold four of them to third plaintiff. Third plaintiff purchased three of the same pumps from another party. Third plaintiff leased a number of the pumps to fourth plaintiff. They all allege the pumps are defective. In August, 1986 they filed suit against defendant in the District Court for the City and County of Denver. First plaintiff sought to recover damages for eighteen pumps. Second plaintiff sought to recover damages in respect of seventeen pumps. Third and fourth plaintiffs sought damages in respect of seven pumps. Defendant filed a removal petition in September 1986.

Plaintiffs' complaint posits four claims for relief. They claim for breach of an implied warranty of merchantability (first claim for relief), for breach of an implied warranty of fitness (second claim) and for negligence (third claim). The fourth claim for relief purports to state a claim for manufacture and/or sale of a 'defective and unreasonably dangerous' product. Plaintiff's claim damages, including incidental and consequential damages incurred by them as a result of the alleged defects in the pumps.

Defendant moves for summary judgment on five separate grounds. It asserts the law governing plaintiff's complaint is that of California. It argues the implied warranties invoked by plaintiffs have been validly disclaimed by defendant. It asserts plaintiffs' claims for economic loss are not sustainable, because economic losses arising from a buyer's disappointed expectations with a commercial transaction are not recoverable in tort. Finally, it maintains first plaintiff's claims are entirely barred and third and fourth plaintiffs' claims are partially barred by a compromise and settlement of these claims in 1983.

Defendant's motion for summary judgment is granted in part.

## I THE APPLICABLE CONFLICT OF LAW RULES

Plaintiff's complaint may be divided in two. First, there are the third and fourth counts which purport to state a claim in negligence and strict liability in tort. Then there are the first and second claims for relief which allege breach of implied warranty. It is appropriate to deal with these separately.

## A. Third and Fourth Claims—When is a Tort not a Tort?

The difficulties characteristic of any conflict of laws problem are exacerbated in the instant context by an initial complicating argument introduced by defendant. Defendant accepts product liability issues are generally classified as tort problems for the sake of determining the applicable conflict of law rules. It maintains, however, in the instant situation, the problem should be treated as a contract issue. It substantiates this argument by asserting plaintiffs' claim is based upon intangible economic loss not attributable to physical injury to person or harm to tangible things. Losses of this nature, it maintains, are only recoverable in warranty actions. Accordingly, it argues, this should be regarded as an action in contract.

The *lex fori* clearly governs this threshold issue of classification *White v. American Motors Sales Corp.*, 550 F.Supp. 1287, 1289 (W.D.Va.1982) *affd.* 714 F.2d 135 (4th Cir.1983). Given this, the application of a little commonsense can avoid the pages of argument the parties have deposited with the court. Defendant's contention represents an effort to wag the dog by its tail. I am obliged here to apply Colorado conflicts rules to the issues before me, *Dresser Indus., Inc. v. Sandvick*, 732 F.2d 783 (10th Cir.1984). Products liability issues in Colorado are classified as tort problems, *Hickman v. Thomas C. Thompson Company*, 592 F.Supp. 1282, 1286 (D.Colo.1984). This is a products liability suit. Therefore, this is a tort suit. If damages based on intangible economic loss are not recoverable in tort, then they are not recoverable in this suit. To this separate issue I shall return. But the point is, as far as classification is concerned, it is a separate issue.

I have been referred to no authority for the proposition that classification issues in conflict of law problems are to be determined according to the character of damages sought, rather than the cause of action posited. I find it very difficult to believe any exist.

The choice-of-law rules I therefore apply here are Colorado's tort choice-of-law rules. Colorado law applies the 'most significant relationship' rule as enunciated in the Restatement (Second) of Conflict of Laws § 145 (1971) to interstate tort problems, *First National Bank in Fort Collins v. Rostek*, 182 Colo. 437, 514 P.2d 314, 320 (1973).

Section 145 provides;

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include;

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred

(c) the domicil, residence nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Section 6 lists the following factors as relevant to choosing the applicable law,

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum.

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

In the instant context, the following are the principal connecting factors.

1. First and second plaintiffs are Colorado corporations with their principal places of businesses in Colorado.

2. Third and fourth plaintiffs are Texas corporations with their principal places of business in Texas.

3. Defendant is a California corporation with its principal place of business in California.

4. The pumps were originally purchased by different entities in nine states, Colorado, Illinois, Texas, Oregon, Washington, California, North Carolina and Idaho.

5. The pumps are presently located in four different states, Colorado, Texas, Georgia, and California.

6. Third and fourth plaintiffs purchased and/or leased the pumps from first plaintiff in Colorado.

7. The products were designed in California.

The choice, as the parties recognize, must be between Colorado and California. I am satisfied that application of the above test to these connectors clearly posits that Colorado law should govern the tort issues. In so concluding, I attach particular importance to the fact the relationship between the parties *as a whole* was centered here, first and second plaintiffs being Colorado corporations and the leasing arrangements having been executed here. The domicile, residence, place of incorporation and place of business of the parties and the place where the relationship of the parties is centered assumes pivotal importance in determining the applicable law in negligence suits, *Sabell v. Pacific Intermountain Express Co.*, 36 Colo.App. 60, 536 P.2d 1160 (1975). Further, the place the injury occurred, rather than the place of manufacture, provides the most compelling policy concerns in situations such as the present, *Hickman v. Thompson*, 592 F.Supp. 1282, 1286 (D.Colo.1984). Finally, the most important factors to be considered in this context are those contained in § 6(b) and (c) of the Restatement, *Conlin v. Hutcheon*, 560 F.Supp. 934, 936 (D.Colo.1983). These point to Colorado law.

### B. The contract claims

■ The contracts 'contacts' test is not identical to that employed for the resolution of tort conflicts problem. Given the differing policy considerations applying to interstate contract and tort problems, it is conceivable that different governing laws will emerge from the same fact pattern. Colorado applies the 'most significant relationship' rule contained in § 191 of the Restatement, *Webb v. Dessert Seed Co. Inc.*, Colo., 718 P.2d 1057 (1986). This points, in the absence of express choice by the parties, to the place of delivery unless the considerations outlined in § 6 dictate another state has a more significant relationship with the transaction. In particular, the place of delivery rule is inapplicable where 'the contract contemplates a continued relationship between the parties which will be centered in a state other than that where delivery took place', Restatement comment *f* to § 191. This is clearly the case with an agreement of this nature, see *Collins Radio Co. of Dallas v. Bell*, 623 P.2d 1039 (Okl.App.1980). Colorado law again governs these claims.

Colorado law accordingly governs both the contract and tort issues.

### II THE VALIDITY OF THE DISCLAIMERS

■ The validity of disclaimer clauses in Colorado is governed by Colo.Rev.Stat. § 4–2–316(2). This demands that to exclude the implied warranty of merchantability, the language of the warranty must actually mention merchantability, must be in writing, and must be conspicuous. To exclude an implied warranty of fitness, the language must again be conspicuous but the warranty excluded need not be specifically mentioned. The provision states a disclaimer clause to the effect 'There are no warranties which extend beyond the description on the face hereof' will suffice to exclude the warranty of fitness of purpose. 'Conspicuous' is defined by § 4–1–201(10) in terms of a clause written so that a reasonable person against whom it is to operate ought to have noticed it. § 4–1–201(10) is qualified by § 4–2–316(3). Subparagraph (a) of this provision reads as follows;

Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults', or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain there is no implied warranty.

There are two clauses in issue. The first appears in the actual dealership agreement and reads;

There are no warranties, express or implied, made by Seller on the products sold by it to Dealer, or anyone else, except as follows ...

Dealership Agreement ¶ 8.

I find this clause to be conspicuous for the purposes of the provision. Plaintiffs seek to argue the clause was not conspicuous within the meaning of the provision on the basis the print was not bold. This is not necessary, *J & W Equipment, Inc. v. Weingartner*, 5 Kan.App.2d 466, 618 P.2d 862, 865–866 (1980). In any event, the relevant clause was indented, which does point to its being conspicuous, *Michican Mutual Liability Insurance Co. v. Fruehauf Corp.*, 63 Mich.App. 109, 234 N.W.2d 424, 428 (1975). In transactions such as that in question here, between a commercial buyer and a commercial seller, plaintiffs' weak claim there is no evidence the clause was drawn to its attention is simply untenable, see *Cherokee Investment Company v. Voiles*, 166 Colo. 270, 443 P.2d 727, 729 (1968). Further, the exclusion clause employed comes within the requirements of the statute insofar as disclaimer of the implied warranty of fitness for purpose is concerned. Accordingly, defendant's motion for summary judgment on the first claim for relief is granted.

■ This is not the case, however, regarding the implied warranty of merchantability. The word merchantability is not mentioned. The statute demands it must be. The prevalent view is that the provisions of § 4-2-316(3) do not qualify this requirement, *J. White and R. Summers*

'*Uniform Commercial Code*' § 12–5 n. 46 and the authorities cited therein, *Two Rivers Co. v. Curtiss Breeding Service*, 624 F.2d 1242, 1252 (5th Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 348 (1981), *Wilson v. Marquette Electronics, Inc.*, 630 F.2d 575, 582 (8th Cir.1980).

■ The second clause relied upon by defendant was allegedly provided with each of the Titan Pumps. This specifically states there is no implied warranty of merchantability, and appears in large capitalized letters. I accept if it can be shown this was in fact furnished with each of the machines, it excludes liability. Plaintiffs claim it was not. This is clearly a question of fact. It obviously stands on a different footing to an express written agreement signed by the contracting parties. No evidence has been adduced to indicate it was in fact delivered with each pump. Accordingly, it is inappropriate to grant summary judgment on the point at this stage.

## III LIMITATIONS

■ All parties agree the applicable statute of limitations to the first and second claims for relief is Colo.Rev.Stat. § 4–2–725. This provides, insofar as the present action is concerned[1], a four year limitation period in any action for breach of contract of sale. Sub-section (2) provides in material part;

A breach of warranty occurs when tender of delivery is made; except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

Plaintiffs accept the pumps were delivered no later than 1980. They, however, maintain the statute has been tolled. They seek to rely upon the repair doctrine enunciated by this court in *Colorado–Ute Electric Association, Inc. v. Envirotech Corp.*, 524 F.Supp. 1152, 1155 (D.Colo.1981).

**1.** The statute has been amended with effect from July 1, 1986. This action was filed June 30, 1986.

There, Judge Carrigan expounded two related doctrines, firstly that unsuccessful efforts at repair will in themselves serve to toll the statute of limitations and secondly the broader principle that repeated assurances by a seller to stand by its warranties will operate so as to create an estoppel, preventing the latter from relying upon the statute of limitations. This clearly, again, raises a question of fact.

## IV ECONOMIC LOSSES AND COMMERCIAL TRANSACTIONS

Plaintiffs phrase their third claim for relief in negligence. They seek the damages for the fact:

> The failures in the Titan 3900's have decreased the value of all the Titan 3900's and made them unmarketable, and Plaintiffs have incurred damages for repairs, retrofitting of replacement parts and down time, resulting in lost profits. Statement of Claim ¶ 15.

Their fourth claim for relief is for strict liability in tort. The damages sought are the same.

Defendant now argues economic losses of the nature sought are not recoverable in tort. Plaintiffs disagree. Plaintiffs cite three cases in support of their position, *Hiigel v. General Motors Corp.*, 190 Colo. 57, 544 P.2d 983, 989 (1975), *Adams–Arapahoe School District No. 28–J v. Celotex Corp.*, 637 F.Supp. 1207, 1209 (D.Colo.1986) and *Aetna Casualty and Surety Co. v. Crissy Fowler Lumber Co.*, 687 P.2d 514, 517 (Colo.App.1984).

There has been a pronounced effort among courts in the last three years, not only in this country but in common law jurisdictions all over the world, to stem the seemingly ceaseless march toward merger of principles of tort and contract[2]. At the vanguard of this onslaught has ridden the availability of economic loss as a remedy in tort. The Supreme Court has recently asserted;

> Damage to a product itself is most naturally understood as a warranty claim. Such damage means simply that the product has not met the customer's expectations.... The maintenance of product value and quality is precisely the purpose of express and implied warranties
>
> *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 106 S.Ct. 2295, 2303, 90 L.Ed.2d 865 (1986). Citations omitted.

This makes perfect sense conceptually. As the court noted, '[i]n products liability law, where there is a duty to the public generally, forseeability is an inadequate brake', '[a] warranty action has a built in limitation on liability, whereas a tort action could subject the manufacturer to damages of an indefinite amount', *id.* at 2304. More importantly the principle so expounded operates so as to clarify, and protect effectively the principal concern and function of the law of contract—the protection of the legitimately bargained expectations of the parties. The imposition of tortious remedies upon that well established body of law can produce not only uncertainty, not only economic disarray but also a radical undercurrent which threatens to subvert the very concept of predetermined risk allocation. See *Postal Instant Press v. Jackson*, 658 F.Supp. 739, 747–748 (D.Colo.1987) for my further explication of this issue.

▮ In circumstances such as the present, it makes perfect sense practically. To enable a plaintiff in the instant context to frame his action in tort rather than breach of warranty provides a convenient means of evading the strictures of the Uniform Commercial Code as enacted in this jurisdiction. This code is intended to operate as a self-contained and complete regula-

---

**2.** As Justice Blackmun has eloquently phrased it, the development of a coherent body of products liability law affording more protection from defective products than the law of warranty, raises the spectre of contract law being allowed to 'drown in a sea of tort', *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 106 S.Ct. 2295, 2300, 90 L.Ed.2d 865 (1986). The court in *East River* was exercising its admiralty jurisdiction. For an enlightening discussion as to whether the decision applies to fishermen, see *McConnell v. Caterpillar Tractor Co.*, 646 F.Supp. 1520 (D.N.J.1986).

tory framework for commercial transactions.

■ In *Hiigel*, an individual, non-commercial plaintiff sought recovery in tort for damage to a motor home allegedly caused by defects in the product itself. The Colorado Supreme Court allowed this claim, stating,

> Although there is a split among the jurisdictions as to whether the damage to the product sold is covered under the doctrine of strict liability, we think it is, *Santor v. Karagheusian, Inc,* 44 N.J. 52, 207 A.2d 305 (1965).
>
> 544 P.2d at 989.

*Santor* was expressly disapproved by the Supreme Court in *East River id.* at 2302. Since the decision in *Hiigel*, *Santor* has also been the subject of further consideration by the New Jersey Supreme Court. In *Spring Motors v. Ford Motor Company,* 98 N.J. 555, 489 A.2d 660 (1985), *Santor* was expressly limited to non-commercial contexts. The court held;

> a commercial buyer seeking damages for economic loss resulting from the purchase of defective goods may recover ... under the U.C.C., but not in strict liability or negligence.
>
> 489 A.2d 663.

This squares with the Supreme Court's conclusion in *East River,*

> Since a commercial situation generally does not involve large disparities in bargaining power, we see no reason to intrude into the parties' allocation of risk.
>
> 106 S.Ct. at 2303, citation omitted.

I shall accordingly restrict the decision in *Hiigel* to its particular facts. Plaintiffs may not claim damages for injury to a product itself in tort pursuant to a commercial transaction. This accords with the Supreme Court's decision in *East River*[3]. It also accords with the law in most other jurisdictions, see *Jones & Laughlin Steel v. Johns—Manville Sales,* 626 F.2d 280, 287 (3rd Cir.1980), *2000 Watermark Assoc., Inc. v. Celotex Corp.,* 784 F.2d 1183, 1185 (4th Cir.1986) and the cases cited therein.

I have been referred to no authority applying *Hiigel* to have arrived at the conclusion advocated by plaintiffs[4]. The two authorities specifically relied upon by them, *Aetna Casualty* and *Adams–Arapahoe* are readily distinguishable. *Aetna* is different in that there the court was clearly concerned with a situation that involved specific physical damage. *Adams–Arapahoe* is distinguishable in that there was a question of products which were clearly dangerous to persons and other property. Besides no issue arose under the U.C.C.

Accordingly, I am of the view the combined effect of the Supreme Court's decision in *East River* and the review of *Santor* by the New Jersey Supreme Court in *Spring Motors* is to compel the conclusion that damages for economic loss are not recoverable in actions of this nature. This does not involve me usurping *Hiigel*, but it certainly cuts the edge of the decision very finely. I note that in *Aloe Coal Co. v. Clark Equipment Co.* 816 F.2d 110 (3rd Cir.1987), the Third Circuit found itself in an equally uncomfortable position as a result of conflict (there direct conflict) between state supreme court precedent and the decision in *East River.* The court asserted;

> We remain convinced that the Pennsylvania Supreme Court would not accept *In-*

---

**3.** Justice Blackmun in *East River,* writing for a unanimous court, identified three different approaches to the question of economic loss in tort. These were first, the majority approach dictating the preservation of a proper role for the law of warranty precludes imposing tort liability if a defective product causes purely monetary harm, *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). Second, the minority approach represented by *Santor* which held the duty to make nondefective products encompassed injury to the product itself, irrespective of whether or not the defect created an unreasonable risk of harm. Third,

the intermediate approach which facilitated products liability suits in certain situations in which a product injured only itself. The latter two approaches were categorically rejected. 106 S.Ct. at 2301–2303.

**4.** See *Thompson v. Nebraska Mobile Homes Corp.,* 198 Mont. 461 647 P.2d 334, 337 (1982), *Bendix Westinghouse v. Latrobe,* 427 F.Supp. 34 (D.Colo.1976). *U.S. Welding v. Burroughs Corp.,* 587 F.Supp. 49 (D.Colo.1984) is readily distinguishable.

*dustrial Uniform [Rental Co. v. Internation Harvester Co.,* 317 Pa.Super. 65, 463 A.2d 1085 (1983)] and *Johnson [v. General Motors Corp.,* 349 Pa.Super. 147, 502 A.2d 1317 (1986)] in the light of the United States Supreme Court's rejection of *Pennsylvania Glass Sand [Corp. v. Caterpillar Tractor Co.,* 652 F.2d 1165 (3d Cir.1981)].... We believe that Pennsylvania courts will reaffirm their lack of hospitality to tort liability for purely economic loss.

816 F.2d at 119. Citations omitted.

Were it necessary, I should not hesitate to say the same of the Colorado Supreme Court and *Hiigel*[5]. Defendant's motion for summary judgment on plaintiffs' third and fourth claims for relief is granted.

## V COMPROMISE AND SETTLEMENT

■ Defendant finally contends first plaintiff's claims are entirely barred and third and fourth plaintiffs' claims are partially barred by a compromise and settlement of these claims in 1983. Plaintiffs assert this compromise and settlement fails for lack of consideration. If this can be proven at trial, it clearly raises a good defense. This proposition is inextricably bound up with questions of fact alleged by plaintiffs. Determinations of this nature are inappropriate on a motion for summary judgment.

Plaintiffs are accordingly left with only their first claim for relief. This alleges breach of the warranty of merchantability. In order to sustain this claim, plaintiffs must be in a position to prove facts which will toll the statute of limitations for each product, which will substantiate their claim the warranty accompanying each of the products was not received and establish the compromise and settlement was invalid. I expect them to pursue this action further only if they can adduce evidence reasonably pointing toward this conclusion.

Accordingly it is ORDERED, defendant's motion for summary judgment on plain-

5. But see the decision of the ninth circuit in *Bancorp Leasing & Finance Corp. v. Agusta Avia-*

tiff's second, third and fourth claims for relief is GRANTED.

*tion,* 813 F.2d 272, 277 (9th Cir.1987).