[Civ..No. 9051. Fourth Dist., Div. Two. June 25, 1969.]

HELEN E. JOHNSON et al., Plaintiffs and Respondents, v. STANDARD BRANDS PAINT CO., Defendant and Appellant.

334

Betts & Loomis and Royal M. Miller for Defendant and Appellant.

Eckhardt & Kearney, Thomas M. Eckhardt and Matthew M. Kearney for Plaintiffs and Respondents.

TAMURA, J.—Defendant, Standard Brands Paint Co. (Standard Brands), appeals from a wrongful death judgment in favor of the widow and minor son of Orville Johnson who died from injuries sustained in a fall from a ladder while performing work in a building as an independent plumbing contractor. Just prior to the accident he was standing on a stepladder and another workman was nearby on an aluminum extension ladder which had been purchased from one of defendant Standard Brands' stores. Plaintiffs alleged the extension ladder had been defectively designed and that the defect caused its legs to slip away from the wall and strike and overturn the stepladder on which decedent was standing. The cause was submitted to the jury solely on the doctrine of strict liability.[1] The verdict was against Standard Brands and judgment was entered thereon.

Standard Brands' contentions are (1) that the doctrine of strict liability should not be extended to a "bystander" and

[1]During the course of the trial plaintiffs settled with certain other named defendants and the case proceeded to conclusion only against Standard Brands.

(2) that plaintiffs failed to meet the burden of proving the elements necessary to bring the doctrine into play.

 Viewing the evidence in the light most favorable to the party prevailing below, as we are bound to do as a reviewing court (*Waller* v. *Southern Pac. Co.*, 66 Cal.2d 201, 204 [57 Cal.Rptr. 353, 424 P.2d 937]; *Estate of Teel*, 25 Cal.2d 520, 527 [154 P.2d 384]; *Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]; it may be summarized as follows:

A commercial building was being remodelled and decedent had been employed to do the plumbing work, Howard Conklin to do the electrical work, and one James Mitchell to assist Conklin. Conklin owned and had on the jobsite an aluminum extension ladder which he had purchased 10 months earlier from a Standard Brands' store. The room in which the accident occurred had a trowelled, smooth cement floor and a ceiling height of 11 feet, 3 inches. At the time of the accident, decedent was standing on top of a wooden stepladder tightening a gas pipe cap with a wrench. Mitchell was on the aluminum extension ladder which had been placed in its unextended position against an adjacent wall. Conklin who was standing nearby heard a noise, turned and saw both ladders on the floor; Mitchell was still on the extension ladder face down and decedent was lying on the floor. Neither Conklin nor Mitchell saw precisely how the accident happened.

The extension ladder was 10 feet long, when unextended. It had two vinyl covered metal loops at the top which came in contact with the wall when the ladder was placed against the wall in its unextended position with the extension section facing the wall. Following the accident, the wall against which the aluminum extension ladder had rested was marred with two dark lines, 13 inches apart and running vertically down from a height of 9 feet. A chemical test of the dark substance taken from the lines revealed that it was vinyl material similar to the vinyl covering of the two metal loops.

In reconstructing the accident, Dr. Morelli, a professor of engineering, testified that in his opinion the extension ladder had been positioned with the extension section facing the wall and the vinyl covered loops in contact with it, that as so positioned the metal ends of the extension section rather than the safety footings carried the load, that the weight of Mr. Mitchell exerted a force causing the metal ends of the ladder to slide away from the base of the wall along the smooth concrete surface of the floor, that as the legs of the ladder slid outward the top came straight down causing the vinyl covered

loops to leave the two vertical lines on the wall, and that the sliding legs of the extension ladder struck the stepladder causing decedent to fall to the floor.

Stephen E. Blewett, a consulting chemist and physicist, testified that when the ladder is positioned with the extension section facing the wall, the weight of a man would cause the raw ends of the aluminum section to carry the load and that this feature constituted a defect in design. In his opinion the defect would not be apparent to a user because while the safety footing would appear to be in contact with the floor as soon as weight is placed on the ladder the metal ends would bear the entire load. He testified that in ladders later sold by Standard Brands, the safety footings had been enlarged to prevent the metal ends from coming into contact with the floor.

Paul Dieges, a civil engineer, testified that a slight design modification, either by the removal of a small segment from the bottom of the extension section or by placement of a rubber stopper to prevent the extension section from touching the floor, would have made the ladder safe to use with the extension section facing the wall.

Standard Brands' employees testified that before the aluminum extension ladders were distributed to the various Standard Brands' stores, they were given only a visual inspection to see that the safety shoes were on and for any visible damage. When Mr. Conklin purchased the ladder, he was given no instructions or warnings respecting its use.

John Senne, a mechanical engineer called by defendant, testified that from tests he conducted, he found that when the ladder was positioned with the extension section facing the wall and with the top approximately 9 feet from the floor, the feet rested approximately 4½ feet from the base of the wall, that in that position the weight of a 150-pound man on the fifth rung would cause the ladder to be on the verge of slipping, that when the ladder was placed at a like angle, but with the extension section away from the wall, the ladder rested on the rubber footings and did not slip. He testified that the proper angle to rest the ladder against the wall would be 75 degrees, with the feet approximately 2½ feet from the base of the wall. In his opinion it would be improper to use the ladder with the feet 4 to 5 feet away from the base of the wall. On cross-examination, however, he admitted that when the ladder is placed with the extension section facing the wall, the metal ends would touch the floor and that an

inexperienced person might use the ladder in its unextended position with the vinyl covered loops against the wall.

A field safety engineer for the division of industrial safety, called by defendant, testified that it would be improper to use the ladder with the feet 4 feet, 9 inches, from the base of the wall. On cross-examination, he testified that he had seen metal extension ladders which would be supported by safety footings, when used unextended, whether placed with the extension section facing or away from the wall.

Defendant seeks a reversal on the following grounds: (1) the doctrine of strict liability for placing a defective article on the market is not available to a bystander; (2) the evidence shows as a matter of law that the ladder was not being used in the manner and for the purpose for which it was intended; (3) plaintiffs failed to sustain their burden of proving that the user of the ladder was unaware of its defect.

## I

The doctrine of strict liability is firmly established in this state. ■ "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." (*Greenman* v. *Yuba Power Products, Inc.*, 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; *Elmore* v. *American Motors Corp.*, 70 Cal.2d 578, 583 [75 Cal.Rptr. 652, 451 P.2d 84]; *Vandermark* v. *Ford Motor Co.*, 61 Cal.2d 256, 260-261 [37 Cal.Rptr. 896, 391 P.2d 168].) Liability extends to retailers and wholesalers as well as manufacturers. (*Elmore* v. *American Motors Corp., supra*, p. 587; *Vandermark* v. *Ford Motor Co., supra*, pp. 262-263; *Kriegler* v. *Eichler Homes, Inc.*, 269 Cal.App.2d 224, 227 [74 Cal.Rptr. 749]; *Canifax* v. *Hercules Powder Co.*, 237 Cal.App.2d 44, 52-53 [46 Cal. Rptr. 552].)

■ Defendant's contention that the doctrine is not available to an injured bystander has been answered by *Elmore* v. *American Motors Corp., supra*, 70 Cal.2d 578, a major decision in the development of the law of strict liability in this state. The court held that the doctrine was available to an injured bystander in an action against a manufacturer and a retailer of an allegedly defective automobile.

The fact that the present case involves a ladder and not an automobile does not render the principle announced in *Elmore, supra*, less applicable. ■ The doctrine of strict lia-

bility is not confined to products which are inherently dangerous. (Prosser, *Strict Liability to the Consumer* (1966) 18 Hastings L.J. 9, 21-22.) The fact that risk of harm to a bystander from a defective ladder may not be as apparent as in the case of a defective automobile relates to the problem of foreseeability and not to the question of the existence of a legal duty on the part of the seller to a bystander.[2] In extending protection to bystanders, the court in *Elmore, supra,* p. 586, noted: "If anything, bystanders should be entitled to greater protection than the consumer or user where injury to bystanders from the defect is reasonably foreseeable." In Harper & James, Torts, Supplement to volume II, p. 246, the authors state: "Under the strict liability tort theory, where notions of privity have no part, the bystander could probably recover if injury to him was foreseeable under generally applicable tests."

■ Where the law imposes a duty, the question of foreseeability of injury is an issue for the trier of fact. (*Hergenrether* v. *East,* 61 Cal.2d 440 [39 Cal.Rptr. 4, 393 P.2d 164]; *Richards* v. *Stanley,* 43 Cal.2d 60, 62-63 [271 P.2d 23]; *Wright* v. *Arcade School Dist.,* 230 Cal.App.2d 272, 277 [40 Cal.Rptr. 812].) In the present case, the jury found that the defective design of the ladder was the proximate cause of decedent's injury and death. ■ From the evidence heretofore summarized, it is apparent that there was substantial evidence to support the jury's implied finding that the decedent was within the ambit of those entitled to protection from the risk created by the distribution and sale of the defective ladder and the defect was the proximate cause of decedent's death. ■ Although witnesses were unable to describe precisely how the accident happened, in a strict liability case, the defect in the article as well as proximate cause may be established by circumstantial evidence. (*Elmore* v. *American Motors Corp., supra,* 70 Cal.2d 578, 583.) ■ While the precise manner in which the accident occurred in the instant case may not have been anticipated, reasonable fore-

---

[2]It has even been suggested that foreseeability should be irrelevant in a strict liability case because the doctrine is premised on loss distribution rather than on fault. (*Strict Products Liability and the Bystander,* 64 Colum.L.Rev. 916, 935.) In this state loss distribution has been adopted as the rationale for imposition of strict liability on manufacturers and retailers. (*Elmore* v. *American Motors Corp.,* 70 Cal.App.2d 578, 585 [75 Cal.Rptr. 652, 451 P.2d 84]; *Greenman* v. *Yuba Power Products, Inc.,* 59 Cal.2d 57, 63 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].)

seeability does not require anticipation of the exact chain of consequences nor their precise nature and extent. (See Harper & James, Torts, 1149-1150; Prosser, Torts, 309.)

## II

We turn to defendant's principal contention that the evidence established as a matter of law that the ladder was not being used for the purpose for which it was intended.

Preliminarily, it should be noted that the present case was tried on the assumption that in order to prevail in an action against a manufacturer or retailer, a bystander must prove the same elements which a user would be required to establish in a like action. Accordingly, the jury was instructed that plaintiffs had the burden of proving those issues which the parties conceived to be essential for recovery by a user.[3] At oral argument plaintiffs' counsel candidly conceded that insofar as the present case is concerned, this court is bound by those instructions in assessing the validity of defendant's contentions respecting the issues to be proved by plaintiffs and the burden of proof despite the Supreme Court's statement in *Elmore* v. *American Motors Corp., supra,* 70 Cal.2d 578, 586, that a bystander should be entitled to greater protection than the consumer or user.

In the present case, the jury was instructed that plaintiffs had the burden of proving among other issues that the "ladder was being used for the purpose for which it was designed and intended to be used." Defendant argues that the evi-

[3] The court instructed the jury that plaintiffs had the burden of proving by a preponderance of evidence the following elements:

"(1) That defendant Standard Brands Paint, Inc., was retailer of the ladder purchased by defendant Conklin.

"(2) That defendant S.B.P. Inc. knew the article would be used without inspection for defects.

"(3) That a defect existed in the design or manufacture of the ladder and the defect proximately caused death of decedent.

"(4) Defendant Conklin was not aware of defect.

"(5) Ladder was being used for the purpose for which it was designed and intended to be used.

"(6) Plaintiffs' damages."

In addition, the court gave BAJI 218-A reading:

"YOU ARE INSTRUCTED THAT the retailer of an article who places it on the market for use under such circumstances where he knows that such article will be used without inspection for defects, is liable for injuries proximately caused by defects in the manufacture or design of the article of which the user is not aware, provided the article was being used for the purpose for which it was designed and intended to be used."

For criticism of the BAJI instruction see *Preston* v. *Up-Right, Inc.,* 243 Cal.App.2d 636, 639 [52 Cal.Rptr. 679]; Lascher, *Strict Liability in Torts for Defective Products,* 38 So.Cal.L.Rev. 30, 48-50.

dence discloses that the ladder was improperly used, as a matter of law, in that (1) it was used with the extension section facing the wall, and (2) it was positioned at such an angle that the feet were 4 to 5 feet from the base of the wall. The contention is devoid of merit.

█ In an action by a user or consumer, it has been frequently stated that it is incumbent upon the plaintiff to prove "that he was injured while using [the article] in a way it was intended to be used as a result of a defect in design and manufacture of which plaintiff was not aware that made the [article] unsafe for its intended use." (*Greenman* v. *Yuba Power Products Co., supra,* 59 Cal.2d 57, 64; *Martinez* v. *Nichols Conveyor etc. Co.,* 243 Cal.App.2d 795, 798 [52 Cal. Rptr. 842]; *Preston* v. *Up-Right, Inc.,* 243 Cal.App.2d 636, 639 [52 Cal.Rptr. 679]; *Erickson* v. *Sears, Roebuck & Co.,* 240 Cal.App.2d 793, 799 [50 Cal.Rptr. 143].) The requirement that plaintiff prove that the product was being used "in a way it was intended to be used," should not be narrowly applied. Professor Prosser employs the terms an "expected normal use" and "abnormal use" and notes that even an "unusual use" of a product, such as standing on a chair (*Phillips* v. *Ogle Aluminum Furniture, Inc.,* 106 Cal.App.2d 650, 654 [235 P.2d 857]), is a use which the seller is required to anticipate and will not relieve the seller of liability in the absence of warnings against such use. (Prosser, *supra,* 18 Hastings L.J. 9, 36-38.) The ultimate test is whether the article was being used in a way which the seller should have reasonably anticipated. (Harper & James, *supra,* Torts, 1564.)

█ In the case under review the extension ladder was being used as a ladder and not for some "abnormal" or even "unusual" use. Even assuming that the facts were as defendant asserts them to be—that the ladder was not designed or intended to be used with the extension section facing the wall or with the base 4 to 5 feet from the wall— they would not, as a matter of law, absolve the defendant of liability. It is undisputed that no warnings or instructions against such use were given. █ "[A] product, although faultlessly made, may nevertheless be deemed 'defective' if it is unreasonably dangerous to place the product in the hands of a user without a suitable warning. [Citations.]" (*Gherna* v. *Ford Motor Co.,* 246 Cal.App.2d 639, 651 [55 Cal.Rptr. 94]; *Barth* v. *B. F. Goodrich Tire Co.,* 265 Cal.App.2d 228, 244 [71 Cal.Rptr. 306]; *Canifax* v. *Hercules Powder Co., supra,* 237 Cal.App.2d 44, 52-53; Prosser, *supra,* 18 Hastings

L.J. 9, 37.)[4] Inasmuch as the ladder was being used as a ladder, the question whether the way in which it was used was one which should have been expected by the seller was, at most, an issue to be resolved by the trier of fact. (See Harper & James, Torts, *supra*, 1546.)

 Moreover, contrary to defendant's assertion there was substantial evidence that use of the ladder in its unextended position with the extension section facing the wall was not an improper use. The fact that the safety shoes would be in apparent contact with the floor whichever way the ladder was faced, would have indicated to a user that the ladder was designed to be used in either position. And the fact that the vinyl covered loops, which were designed to prevent marring of the walls and to avoid lateral slippage, would touch the wall only by positioning the ladder with the extension section facing the wall would indicate to a user that that was the proper way to use the ladder.

With respect to the distance of the ladder from the base of the wall, while there was some evidence that it may have been 4 to 5 feet, there was also substantial evidence from which the jury could have reasonably inferred that the distance was less than 4 feet. Mr. Conklin testified that it was 3 feet. Tests conducted by an expert showed that when the feet were positioned 4 to 5 feet from the wall the ladder slid with no weight on it. The fact that prior to the accident Mr. Mitchell had his full weight on the ladder would indicate that the distance of the feet of the ladder from the wall could not have been 4 to 5 feet. There was expert testimony that even with the feet 2½ feet from the wall the metal extension section would carry the weight and the ladder would be on the verge of slipping. Defendant urges that the fact that the vertical lines on the wall commenced at a point 9 feet above the floor indicated that the ladder must have been positioned at an angle which placed the feet 4 to 5 feet from the base of the wall. However, there was no evidence that the ladder could not have slid down some distance before sufficient friction was developed to cause the vinyl to leave marks on the wall.

We conclude that there was substantial evidence to support the jury's implied finding that the ladder was ''being used for the purpose for which it was designed and intended to be used.''

---

[4]In *Erickson* v. *Sears, Roebuck & Co.*, 240 Cal.App.2d 793 [50 Cal.Rptr. 143], cited by Standard Brands, printed warnings were placed on the ladder at the time of the sale.

## III

Finally, defendant contends that plaintiffs failed to meet the burden of proving that the user (Mr. Conklin) was unaware of the defective design of the ladder.

The jury was instructed that one of the issues plaintiffs were required to prove was that "defendant Conklin was not aware of the defect." While the instruction may have been proper in an action brought by a user (*Preston* v. *Up-Right, Inc., supra,* 243 Cal.App.2d 636; *Gutierrez* v. *Superior Court,* 243 Cal.App.2d 710 [52 Cal.Rptr. 592]), knowledge on the part of the user would not necessarily bar recovery in an action by a bystander. In a negligence action, intervening negligence will not constitute a superseding cause relieving the tortfeasor if such negligence is reasonably foreseeable. (*Benton* v. *Sloss,* 38 Cal.2d 399, 405 [240 P.2d 575]; *Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 219-220 [157 P.2d 372, 158 A.L.R. 872]; Prosser, *supra,* 18 Hastings L.J. 9, 38; Harper & James, Torts, *supra,* 1558.) It has been suggested that a like conclusion should be reached in strict liability cases. (Prosser, *supra,* 18 Hastings L.J. 9, 38-39.) ▮ Where a defective product causes injury to a bystander, the policy of loss distribution is best served by making the manufacturer or retailer liable even though the product is used with knowledge of the defect, at least, where it is reasonably foreseeable that it would be so used. As the court observed in *Elmore* v. *American Motors Corp., supra,* 70 Cal.2d 578, 586: " . . . Consumers and users, at least, have the opportunity to inspect for defects and to limit their purchases to articles manufactured by reputable manufacturers and sold by reputable retailers, whereas the bystander ordinarily has no such opportunities. In short, the bystander is in greater need of protection from defective products which are dangerous, and if any distinction should be made between bystanders and users, it should be made . . . to extend greater liability in favor of the bystanders." It might be added that not only does the user have the opportunity of inspecting for defects, he has the opportunity of choosing not to use the product once he has become aware of the defect. A bystander, however, has no such choice.

▮ In the present case, even assuming, as all parties stipulated, that plaintiffs had the burden of proving Mr. Conklin was unaware of the defective design of the ladder, there is substantial evidence to support the jury's implied finding that he was not aware of the defect.

There was no direct testimony from Mr. Conklin or Mr. Mitchell that they were aware of the defect. On the other hand, there was evidence from which the jury could have reasonably inferred an absence of such knowledge. ▆▆▆ When Mr. Conklin purchased the ladder from defendant, he was given no warning or instructions that the ladder could not be used in an unextended position with the extension section facing the wall; either Mr. Conklin or Mr. Mitchell was the one who placed the ladder against the wall with the extension section towards the wall just prior to the accident; Mr. Conklin was aware of the fact that the purpose of the vinyl-covered loops was to prevent injury to the walls and to avoid slippage; he had used the ladder many times and it had never slipped; and the uncontradicted evidence was that when used in an unextended position, the vinyl-covered loops would touch the wall only when the extension section faced the wall. The evidence was sufficient to support an inference that Mr. Conklin was unaware of the latent defective design of the ladder. ▆▆▆ Mere negligent failure on the part of Mr. Conklin to discover the defect or to take precautions against its existence would not bar recovery by plaintiffs. (Prosser, *supra,* Hastings L.J. 9, 48-49.)

Judgment affirmed.

Kerrigan, Acting P. J., and McGoldrick, J. pro tem.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.