498 P.2d 1292

Thomas D. **ROBINSON** and Robert M. **Robinson**, a co-partnership doing business under the trade name and style of Robinson Roofing Company, Plaintiffs-Appellants,

v.

**WILLIAMSEN IDAHO EQUIPMENT COMPANY, Inc.**, a corporation, Defendant-Respondent.

No. 10903.

Supreme Court of Idaho.

May 16, 1972.

Whittier & McDougall, Pocatello, for plaintiffs-appellants.

Gee & Hargraves, Pocatello, for defendant-respondent.

McQUADE, Chief Justice.

This action in tort and warranty arises from complex facts which require comprehensive treatment. At times relevant to the case plaintiffs-appellants were partners in a roofing enterprise. On July 22, 1965, they purchased for use in their business a truck specially equipped with a Marion hydraulic scissors hoist. The purpose of the hoist was to lift roofing materials on the truck bed as high as 14 feet and to provide convenient access for workmen to roofs. Acting on appellants' behalf, the dealership selling the truck ordered the hoist through respondent, Williamsen Idaho Equipment Co., the area distributor of Marion products. The hoist was installed on the truck at the Marion factory in Ohio, and the combined unit was delivered directly to the truck dealership. Appellants initially took possession in August, 1965, but returned the unit briefly to the dealership for realignment of the truck bed. In turn, the dealership sent the unit to respondent's shop, where the realignment was completed on or about September 1.

Three weeks later, as the hoist was being used to lift gravel to a roof, the truck tipped over on its side. Appellants, who had never before owned a truck with a hydraulic hoist, were "baffled" by the accident. They consulted with respondent's representative, who was of the opinion that the accident was caused by uneven distribution of the load in the truck bed and appellants' inexperience in operating a hoist. The representative later testified at trial that he instructed appellants to distribute the loads more evenly in the future. Appellants did not recall being so instructed on that occasion, but they testified that they

were aware of the need to maintain even loads and always exercised due caution in this respect. In the meantime respondent repaired the hoist and charged appellants' insurer approximately $1,000 for the work. Upon completion, respondent's representative apparently expressed to appellants his belief that the unit "would do a good job."

On October 22, 1965, after return of the unit, the truck tipped on its side a second time when the hoist was extended and sacks of gravel were being transferred to a roof by an employee. Appellants again brought the unit to respondent, demanding that it be made "good as new." Respondent installed new scissor bars, checked and switched the dual hydraulic cylinders, and reinforced the truck's frame and springs. On June 22, 1966, the unit was returned to appellants apparently with the claim that their "troubles were over," and with a further instruction to distribute the loads evenly. Respondent charged nearly $1,800 for this additional work.

The day after the truck left respondent's shop, it tipped over a third time while lifting gravel. Rather than return the unit to respondent again, appellants permitted it to be repossessed without further repairs to the hoist. They brought this action against respondent for general and special damages on theories of negligence and breach of implied or express warranty.[1]

At trial, several explanations for the accidents were suggested, but respondent relied primarily on uneven distribution of the load. It was also suggested that the truck may have been overloaded, causing the truck frame to sag or the rear springs to give way; but the third accident occurred the day after the frame and springs were reinforced and the unit tested by respondent with a similar load. Moreover, respondent's representative testified that the hoist had a high pressure relief valve which would have prevented it from lifting if overloaded. It was further suggested by

deposition that in one instance the gravel, while spread evenly from side to side, was disproportionately loaded to the front of the bed, possibly causing one of the scissor supports to weaken. But appellants testified without contradiction that the load was even in all respects the third time. Finally, a deposition suggested that the sides of the bed bowed under pressure of a maximum load, possibly shifting the truck's center of gravity. However, this caused no difficulty in respondent's final tests, and respondent's representative did not assert it as a causative factor in his testimony.

Appellants adduced undisputed testimony of a hydraulics expert who noted that the hoist had two hydraulic cylinders, but lacked a control device to prevent one cylinder from losing fluid relative to the other in the event of an uneven load. If the load were not balanced the cylinder losing fluid would depress, tilting the bed of the truck, shifting the center of gravity and causing the truck to tip over. That opinion was supported by a series of photographs in evidence, taken after the second and third accidents, showing the slanted truck bed and unequal extension of the cylinders. It also drew support from the testimony of a disinterested bystander who distinctly observed one cylinder sink while the other remained stationary, causing the elevated bed to tilt, when the truck tipped over for the last time. Taken in its entirety, the substantiated testimony at trial established that the accidents resulted from the interplay of uneven loading and the loss of hydraulic fluid in one cylinder causing it to depress.

The parties stipulated that there existed flow control devices for hydraulic hoists in 1965 and 1966, but respondent's representative, whose exposure to Marion hoists dated to 1959, testified that he was unaware of them during those years. However, he also indicated at several points in his testimony that he knew the cylinders on the

1. "Covenants not to execute" were issued to the manufacturer of the hoist, the manufacturer of the truck, the truck dealer- ship and another firm that initially installed the truck bed.

Marion hoist could extend at different rates, or that one could sink relative to the other. Stated simply, he revealed that he knew the effect if not the cause of the problem. He further testified that, although he did not communicate directly with appellants when dealing through the truck dealership, nevertheless, he knew they were the true buyers and was actually informed of the manner in which they intended to use the hoist.

Appellants' expert concluded without contradiction that a Marion hoist of the type sold, would be unsafe to operate when used for the kind of work contemplated by appellants. He further stated without refutation that the design characteristic which rendered it unsafe would not be common knowledge, or even known by most owners of such equipment. On this point, respondent's representative conceded that to his knowledge appellants had received no special warnings, or even qualifying instructions, on use of the hoist at the time of purchase.

When appellants concluded their case-in-chief the trial court, sitting without a jury, took under advisement respondent's motion for involuntary non-suit. At this juncture the court disclosed, without explanation, that he was limiting the issue of respondent's liability to questions of seller's misrepresentation and negligence in subsequent repairs. He then expressed the opinions that respondent had made no mis-representations as seller, and that the case thus turned solely on the question of negligent repairs. In his subsequent memorandum opinion, and findings of fact and conclusions of law, the court held respondent not liable for any negligence in repairs to the hoist. Particularly, the court found that respondent was not negligent in failing to install a flow control device of which it was unaware, and that, in any event, absence of a flow divider was not the proximate cause of the accidents. The court also specifically rejected, without further discussion, both liability in warranty and the strict liability in tort which appellants argued in a post-trial brief.[2] Judgment was entered for respondent and this appeal followed, with appellants assigning error to the rulings on each issue of negligence, warranty and strict liability in tort.

■ Because the legal issues share certain common elements, they are not as complex as the facts which frame them. As applied to this case, the theories of liability on implied warranty and strict liability in tort are co-extensive. Under either theory a seller may be liable for damage caused by unfitness of the product for its intended purpose.[3] Strict liability in tort has emerged as an independent theory of recovery in such a case primarily as a vehicle for imposing liability on the seller if he interposes defenses to liability on implied warranty.[4] Respondent has raised

2. The doctrine of strict liability in tort is thus expressed by the Restatement (Second) of Torts § 402A (1965):
   "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
   "(a) the seller is engaged in the business of selling such a product, and
   "(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
   "(2) The rule stated in Subsection (1) applies although
   "(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

3. E. g., Paullis v. Liedkie, 92 Idaho 323, 442 P.2d 733 (1968) (implied warranty); Wights v. Staff Jennings, Inc., 241 Or. 301, 405 P.2d 624 (1965) and Cintrone v. Hertz Truck Leasing & Rental Service, 45 N.J. 434, 212 A.2d 769 (1965) (strict liability in tort and liability on implied warranty).

4. For further discussion of the distinction between strict liability in tort and liability on implied warranty, see Greeno v. Clark Equipment Co., 237 F.Supp. 427 (N.D.Ind.1965); Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1963); Prosser, "The Assault

such a defense by asserting a lack of privity between itself and the appellants. However, the facts in the record do not appear to support the contention. The truck dealership's representative testified without contradiction that the dealership acted solely as appellants' agent in ordering the hoist from respondent. He stated that the dealership was "not in the business of selling hoists." Rather, the dealership ordered the hoist on appellants' behalf, as part of the truck sale transaction, after the appellants had decided from products literature in their possession that the Marion hoist appeared best suited to their roofing business. As noted earlier, respondent's representative testified that he knew the appellants were the actual buyers for whom the order was placed. These facts do not permit us to interpret the truck dealership's role in the purchase of the hoist as anything other than that of an agent contracting on behalf of the appellants. The facts bring the case within the rule enunciated by courts recognizing the privity doctrine, that the requirement of privity between the seller and the injured plaintiff is satisfied where the party contracting with the seller is the plaintiff's agent.[5] Consequently, there is no lack of privity in this case which would raise an issue of strict liability apart from liability on implied warranty.[6] This appeal therefore turns on implied warranty and on negligence.

■ Recovery in negligence requires that appellants' damages be within the scope of the risk created, that is, proximately caused, by the unsafe condition of the hoist.[7] Similarly, recovery in warranty is limited to damages proximately caused by the alleged breach.[8] Damages in this case resulted from the interplay between uneven distribution of the load on the truck bed and the loss of hydraulic fluid in one cylinder relative to the other. The proximate cause issue turns on whether the uneven loading represented an intervening factor that vitiated the causal relation between appellants' damages and the unsafe condition of the hoist.[9]

■ Respondent knew the purpose for which the hoist was purchased. From the circumstances portrayed in the record it appears that uneven distribution of the load was, in practical terms, an unavoidable incident of using the unit in the roofing business. Even where the contents of the truck bed were precisely balanced, some instability necessarily resulted when a worker walked upon the elevated bed to unload it. In any case, it appears that maintenance of a balance of the materials themselves could not always be expected with loads of gravel or other roofing supplies. The central question is whether the degree of unevenness could have been reasonably foreseen and was sufficient to cause one cylinder to lose fluid relative to

Upon the Citadel, 69 Yale L.J. 1099 (1960) and The Fall of the Citadel, 50 Minn.L.Rev. 791 (1966). On defenses to actions on implied warranty, see, e. g., J. I. Case Credit Corp. v. Andreason, 90 Idaho 12, 408 P.2d 165 (1965); Commercial Credit Equipment Corp. v. Knowlton, 86 Idaho 314, 386 P.2d 370 (1963); and Abercrombie v. Union Portland Cement Co., 35 Idaho 231, 205 P. 1118 (1922), compared with B.B.P. Ass'n., Inc. v. Cessna Aircraft Co., 91 Idaho 259, 420 P.2d 134 (1966).

5. See the authorities compiled in Annotation, 75 A.L.R.2d 39, at 61–62.

6. Analysis of such an issue would be of first impression in Idaho. Davis v. Wyeth Laboratories, Inc., 399 F.2d 121 (9th Cir.

1968) occasionally is cited as "discovering" Idaho law; but it appears from the opinion's reference to the stipulated choice of law that the court actually "discovered" Montana law, although the diversity action was brought in Idaho's federal district court.

7. E. g., Lundy v. Hazen, 90 Idaho 323, 411 P.2d 768 (1966).

8. E. g., Vanderford v. Hylton, 90 Idaho 462, 413 P.2d 183 (1966).

9. See Chatterton v. Pocatello Post, 70 Idaho 480, 223 P.2d 389 (1950); and Tomita v. Johnson, 49 Idaho 643, 290 P. 395 (1930), discussing intervening factors in tort and warranty actions, respectively.

the other. If so, then the uneven loads were foreseeable intervening factors which fell, as a matter of law, within the scope of the original risk created by the unsafe condition of the hoist.[10] In that event, they did not vitiate the proximate relation between that condition and the resultant damage.

█ The trial court made no findings on this critical question; rather, he concluded, without discussion, that proximate cause had not been shown. That general finding, like any finding by the trial court, would be upheld if supported by competent though conflicting evidence.[11] However, appellants established without challenge that the second accident occurred after the hoist had been extended, as an employee walked upon the elevated bed and unloaded sacks of gravel. That event appears to demonstrate that the foreseeable degree of unevenness in the loan was sufficient to cause one cylinder to lose fluid relative to the other. The only contrary evidence adduced by respondent which might have pertained indirectly to this issue was the mere fact that none of the Marion hoists, which had been on the market for a number of years, contained flow control devices. However, respondent made no attempt to connect that fact with this case by showing that when other Marion hoists were used in a similar manner the two cylinders extended and retracted equally. Due to this failure, in light of appellants' evidence, the trial court's conclusion on proximate cause is unsupported by the record before us. Consequently, we must consider the merits of appellants' allegations of negligence and breach of implied warranty.

█ The unsafe condition of the hoist when used for the intended purpose was, in turn, attributable to a design characteristic of which respondent's representative was aware but which he lacked requisite knowledge to alter. He was unaware of flow control devices at the time because none of the Marion hoists contained them. There is no evidence in the record to show that he was informed, or was presented the reasonable opportunity in the conduct of the business to be informed, of the design of hoists marketed by other manufacturers, which contained such devices.[12] This Court has held that the supplier of a tool or instrument for use by another is under a duty to exercise reasonable care, commensurate with the facts and circumstances, to see that the implement is proper and safe for the purpose.[13] In this case, however, respondent was not capable of remedying the defect of which it was aware. We concur with the trial court that respondent breached no duty of care toward appellants by failing to perform an act not reasonably within its capability.

█ Nevertheless, appellants' complaint alleged negligence generally. Resolving the question of duty to install a flow control device does not exhaust the full issue of negligence. As a general rule, if any supplier, including the distributor, of a product knows or has reason to know that the product is likely to be unsafe when used for the purpose for which it is supplied, and has no reason to believe that the persons for whose use the product was supplied will realize its unsafe condition, then the supplier has a duty to exercise reasonable care adequately to warn them of the unsafe condition or of the facts which make the product likely to be dangerous.[14] The record discloses that the

10. Dewey v. Keller, 86 Idaho 506, 388 P.2d 988 (1964) ; Paullis v. Liedke, *supra* note 4; cf. Johnson v. Standard Brands Paint Co., 274 Cal.App.2d 331, 79 Cal. Rptr. 194 (1969).

11. *E. g.*, Thompson v. Fairchild, 93 Idaho 584, 468 P.2d 316 (1970).

12. *Compare* United States v. Marshall, 230 F.2d 183 (9th Cir. 1956) (applying Idaho law).

13. Metz v. Haskell, 91 Idaho 160, 417 P.2d 898 (1966).

14. Restatement (Second) of Torts §§ 388, 497 (1965); I Hursh, American Law of

question of whether respondent breached or complied with this duty was framed by the general pleading of negligence in appellants' complaint, and was placed squarely in issue at trial when witnesses for both sides were closely and repeatedly examined concerning any warnings communicated by respondent to appellants.[15] However, neither the trial court's memorandum opinion nor the separate findings of fact and conclusions of law addressed this issue. While error is not presumed,[16] omission of findings of fact and conclusions of law on an issue of pivotal importance at trial should be corrected.[17] That omission limits our review of appellants' assignment of error on negligence to general discussion of the law governing duty to warn. Application of the law to the facts of this case remains the initial responsibility of the trial court, on remand.

■ The duty to warn has been held generally to apply only to a supplier who knows or has reason to know the unsafe condition of the product when used for the purpose for which it was supplied.[18] Absent proof of actual knowledge, this limitation imposes a foreseeability requirement analogous to the test previously discussed for proximate cause.[19] It has been held expressly with regard to duty to warn that the trial court may consider whether the supplier was, or should have been, aware

of the experiences of other users of the product, in determining whether the supplier knew or should have known the product might be dangerous to the complainant.[20] However, such evidence is not necessarily conclusive if it conflicts with other evidence drawn from the facts of the immediate case;[21] neither does it absolve the supplier's duty to warn if it merely shows that the product might prove unsafe only to a few, foreseeable users.[22]

Because the evidence in the present case to which these rules apply was insufficient to support the trial court's finding on the related question of proximate cause, the court on remand may wish to take further evidence before making the necessary findings on duty to warn. Of course, if such evidence provides support for the original finding on proximate cause that finding may be restated and judgment against appellants re-entered. If the evidence is to the contrary, corroborating appellants' evidence of foreseeability with respect to proximate cause and duty to warn, or if the evidence in the present record is not augmented, then the duty is taken as established. In that event then the court must determine the scope of the duty and whether or not it was breached.

■ Even though a product is not inherently defective in design or manufacture, the supplier's duty to warn extends to

---

Products Liability, § 2:29 (1969). For a lengthy discussion of cases stating this rule in other jurisdictions, *see* Annotation, 76 A.L.R.2d 9. § 403 of the Restatement applies the same duty to an independent contractor for repair.

15. *Compare* Archer v. Shields Lumber Co., 91 Idaho 861, 434 P.2d 79 (1967).

16. *E. g.,* Clear v. Marvin, 86 Idaho 87, 383 P.2d 346 (1963).

17. *See* I.R.C.P. 52(a).

18. *E. g.,* Morris v. Shell Oil Co., 467 S.W. 2d 39 (Mo.1971); Briggs v. Nat'l. Industries, 92 Cal.App.2d 542, 207 P.2d 110 (1949); Alfieri v. Cabot Corp., 17 A.D.2d 455, 235 N.Y.S.2d 753 (1962), aff'd 13 N.Y.2d 1027, 245 N.Y.S.2d 600, 195 N.E.2d 310 (1962); cf. Giroux v. Stedman, 145 Mass. 439, 14 N.E. 538, 1

Am.St.Rep. 472 (1888). *But see* Keeton, Products Liability—Inadequacy of Information, 48 Tex.L.Rev. 398 (1970) for critical discussion of this rule.

19. Pedroli v. Russell, 157 Cal.App.2d 281, 320 P.2d 873 (1958); Marker v. Universal Oil Products Co., 250 F.2d 603 (10th Cir. 1957) (applying Oklahoma law); La Plante v. E. I. Du Pont de Nemours & Co., 346 S.W.2d 231 (Mo.App.1961).

20. *E. g.,* Hardman v. Helene Curtis Industries, Inc., 48 Ill.App.2d 42, 198 N.E. 2d 681 (1964).

21. Braun v. Roux Dist. Co., Inc., 312 S.W.2d 758 (Mo.1958).

22. *See, e. g.,* Love v. Wolf, 249 Cal.App.2d 822, 58 Cal.Rptr. 42 (1967); Basko v. Sterling Drug, Inc., 416 F.2d 417 (2d Cir. 1969) (applying Connecticut law).

risks of danger which arise during the known or foreseeable use of the product.[23] Of course, no warning need be given, regardless of the nature of the supplier-user relationship, if the danger is obvious or actually known to user.[24]

If the danger is not obvious or actually known, the warning given must adequately communicate to the user the information in the supplier's possession which is necessary to avoid unsafe use of the product.[25] While the warning need not be the best possible, it must be reasonable under the circumstances,[26] for an inadequate warning is viewed as no warning at all.[27] The reasonableness of the warning, like the reasonableness of conduct in any negligence context,[28] is related to the risk and extent of the foreseeable harm.[29] The protection afforded through the warning must be reasonably coextensive with the danger, in light of the user's experience with the product.[30]

In the present case, appellants, who never before owned a hoist, admit being generally informed of the need to maintain even distribution of the load. However, they deny the testimony of respondent's representative, that he warned them specifically of the propensity of one hydraulic cylinder to lose fluid relative to the other. The trial court must weigh the credibility of the conflicting testimony.[31] On this determination may turn the question whether appellants received merely instructions for safe operation, which may not qualify as an adequate warning, or whether they received full disclosure of facts in respondent's possession which were necessary for avoidance of the danger.[32] If appellants received a warning, its adequacy must be examined for accuracy and clarity.[33] Moreover, the trial court may evaluate the adequacy of disclosure in light of respondent's reported assurances during repair work that the unit "would do a good job" or that appellants' "troubles were over." In this context, the court may also determine whether appellants contributed to their injury by assuming a risk of harm which they knew and appreciated.[34]

23. Schedlauer v. Chris-Craft Corp., 381 Mich. 217, 160 N.W.2d 889 (1968); Biller v. Allis Chalmers Mfg. Co., 34 Ill.App.2d 47, 180 N.E.2d 46 (1962).

24. E. g., Bradshaw v. Blystone Equipment Co. of Nevada, 79 Nev. 441, 386 P.2d 396 (1963); Crandall v. Stop & Shop, Inc., 288 Ill.App. 543, 6 N.E.2d 685 (1937); Annotation, 76 A.L.R.2d 9, at 28.

25. Restatement (Second) of Torts § 388, Explanatory Notes g through l (1965).

26. Levin v. Walter Kidde & Co., 251 Md. 560, 248 A.2d 151 (1968).

27. E. g., Sadler v. Lynch, 192 Va. 344, 64 S.E.2d 664 (1951); Fidelity Trust Co. v. Wisconsin Iron & Wire Works, 145 Wis. 385, 129 N.W. 615 (1911).

28. Smith v. State, 93 Idaho 795, 473 P.2d 937 (1970); U. S. v. Carroll Towing, 159 F.2d 169 (2d Cir. 1947).

29. Post v. American Cleaning Equipment Corp., 437 S.W.2d 516 (Ky.1969); Tampa Drug Co. v. Wait, 103 So.2d 603, 75 A.L.R.2d 765 (Fla.1958); Tingey v. E. F. Houghton & Co., 30 Cal.2d 97, 179 P.2d 807 (1947).

30. See Lindenberg v. Folson, 138 N.W.2d 573 (N.D.1965).

31. I.R.C.P. 52(a); Thompson v. Fairchild, supra note 11.

32. For discussion of this distinction, see, e. g., J. C. Lewis Motor Co. v. Williams, 85 Ga.App. 538, 69 S.E.2d 816 (1952); Ebers v. General Chemical Co., 310 Mich. 261, 17 N.W.2d 176 (1945); 2 Harper & James, The Law of Torts, § 28.7, at 1547, note 2 (1956).

33. See authorities collected in Annotation, 76 A.L.R.2d 9, at 37, in relation to this testimony of respondent's representative: "I told him [Robert Robinson] that I didn't know how much he could put from one side to the other—had to be careful. I didn't know how much—I knew that it had to be a pretty even load and he had to keep it that way as he unloaded it." Rptr.Tr. 344, lines 4–7.

34. E. g., Metz v. Haskell, supra, note 13. Compare Dillard and Hart, Directions for use and the Duty to Warn, 41 Va.L.Rev. 145, 163 (1955): "[U]sually the plaintiff cannot be said to have assumed a

The court's findings on the negligence issue of duty to warn will also provide a framework for applying the principles of liability on implied warranty. I.C. § 64-114, part of the Sales Act in effect when this cause of action arose, provided that there was an implied warranty of fitness for a particular purpose if the seller knew of that purpose and the buyer relied on the seller's skill or judgment, even though seller was not the manufacturer of the product. The statute further provided that where the product was bought by description from a dealer, regardless of whether the dealer was the manufacturer, there was an implied warranty that the product was of merchantable quality. "Merchantable quality" was construed to mean that the product, while not necessarily of the highest quality, was reasonably fit for the ordinary uses for which it was manufactured.[35] In this manner, the implied warranty of merchantability was distinguished from implied warranty of fitness for a particular purpose. However, these bases of liability frequently overlapped, and when the particular purpose for which a product was to be used coincided with its general functional use, the two implied warranties merged.[36]

In the present case the trial court noted that respondent had made no misrepresentations regarding fitness of the hoist. However, affirmations of fact by the seller are not required for creation of an implied warranty.[37] Breach of implied warranty of fitness for the particular purpose requires only that the seller be made aware of the buyer's need, that the seller recommend a product, and that the buyer purchase the product as recommended.[38] Whether or not a product has been "recommended" is a question, separate from the issue of affirmative representations, which the trial court must decide on the facts of the instant case.

If the court finds no breach of implied warranty of fitness for the particular purpose, it must pass on the issue of implied warranty of merchantable quality. Recommendation and reliance need not be shown to establish implied warranty of merchantability, but the product must be unfit for the ordinary use for which it was manufactured. If appellants used the hoist in a manner which exemplified the ordinary use for which it was manufactured, respondent may be subject to liability. The trial court must make this determination on the facts. In any event, if breach of either type of implied liability is found, liability may be avoided by a showing that appellants knowingly assumed the risk of harm created by the hoist's alleged unfitness.[39]

The judgment of the trial court is vacated. Cause is remanded for findings on respondent's alleged breach of duty to warn and implied warranty. If liability is

risk of which he was ignorant or to have contributed to his own injury when he had no way of reasonably ascertaining that the danger of injury existed. On the other hand, if the plaintiff knew of the danger from an independent source, the manufacturer's failure to warn would not be the proximate cause of the injury."

35. *E. g.*, Paton v. Buick Motor Division, General Motors Corp., 401 S.W.2d 446 (Mo.1966) ; Vallis v. Canada Dry Ginger Ale, Inc., 190 Cal.App.2d 35, 11 Cal.Rptr. 823 (1961) ; Simmons v. Rhodes & Jamieson, Ltd., 46 Cal.2d 190, 293 P.2d 26 (1956) ; Annotation, 21 A.L.R. 367; I Williston on Sales § 243 at 642 (1948 Rev.Ed.). § 2-314(2) of the Uniform Commercial Code, appearing in the Idaho Code as § 28-2-314(2), now includes this interpretation as an express part of the statutory language on merchantability.

36. Beech Aircraft Corp. v. Flexible Tubing Corp., 270 F.Supp. 548 (D.Conn. 1967) (applying Connecticut law) ; *cf.* National Motor Service Co. v. Walters, 85 Idaho 349, 379 P.2d 643 (1963).

37. Branom v. Smith Frozen Foods of Idaho, Inc., 83 Idaho 502, 365 P.2d 958 (1961).

38. Anderson v. Blackfoot Livestock Comm. Co., 85 Idaho 64, 375 P.2d 704 (1962) ; Tomita v. Johnson, *supra note 9*.

39. *See* discussion and authorities collected in Annotation, 4 A.L.R.3d 501, 510-511.

found, the trial court shall proceed to the issue of damages. Costs to appellant.

McFADDEN, DONALDSON, and SHEPARD, JJ., and MAYNARD, District Judge, concur.