518 P.2d 857

James T. SHIELDS et al., Appellants,

v.

MORTON CHEMICAL COMPANY, a division of Morton International, Inc., a corporation and C. K. Brown and Associates, Inc., a corporation, Respondents.

No. 10875.

Supreme Court of Idaho.

Jan. 15, 1974.

Rehearing Denied Feb. 14, 1974.

John C. Hepworth, Hepworth, Nungester & Felton, Buhl, for appellant.

Clemons, Skiles & Green, Randall C. Fredricks, Elam, Burke, Jeppesen, Evans & Boyd, Phillip M. Barber, Boise, for appellee.

SHEPARD, Chief Justice.

This is a products liability case in which plaintiff-appellant has appealed from a judgment in favor of the defendants-respondents following a jury trial and verdict in favor of the defendants. Plaintiff's motions for a directed verdict, for a judgment n. o. v. and for a new trial were denied.

The principal questions presented are whether Idaho has adopted or should now adopt the principle of strict liability in products liability cases, and whether contributory negligence is a defense to the doctrine of strict liability.

The evidence presented at the trial was hotly controverted and involved the traditional battle of experts. Plaintiff-appellant

Shields contends that the evidence established the following facts:

In 1965, Shields, a seed bean wholesaler in Twin Falls County, was desirous of obtaining a new pesticide-fungicide to apply to seed beans. Shields made inquiry of defendant-respondent Brown, a seller and distributor of agricultural chemical commodities. Brown recommended to Shields the usage of a chemical known as Panodrin A–13 to be applied with a Panogen MC–R treater. The pesticide-fungicide and the treater are both manufactured by defendant-respondent Morton Chemical. Shields subsequently purchased both the chemical and the treater from Brown.

Brown allegedly advised Shields that the chemical should be applied to the seed beans at the rate of 3 oz. per cwt. Shields, using the treater, applied the chemical to the beans at the rate of 3 oz. per cwt., although the label affixed to the chemical containers recommended a dosage of 2.5 oz. per cwt. Shields initially encountered overdosing problems with the treater, but felt that the problems were later corrected. A large amount of beans were treated with the chemical through usage of the treater.

Some of the treated beans were sent to Mexico where they failed to germinate properly. *See,* Shields v. Hiram Gardner, Inc., 92 Idaho 423, 444 P.2d 38 (1968). Shields then hired a bean expert who concluded that all of the beans which had been treated with Panodrin A–13 were unsuitable for sale as seed beans. Those tainted beans were recalled, and it was allegedly determined that they had been treated with Panodrin A–13 at the average rate of 2.84 oz. per cwt. Although it is hotly contested by defendants, Shields contends that Panodrin A–13 in any treatment ratio was unsuitable for treatment to seed beans.

Shields brought this action on alternative theories of negligence, breach of warranty and strict liability, seeking to recover for the damage to its seed beans and additional damages for loss of good will and anticipated profits. Following a two week trial

to a jury, resulting in a voluminous transcript, a 9 to 3 verdict was rendered in favor of Brown and Morton Chemical. Shields appeals from the judgment entered against it on the jury verdict and from a denial of its motions for directed verdict, judgment n. o. v. and a new trial.

Both parties and the trial court assumed that the doctrine of strict liability was in force in Idaho products liability cases. Plaintiff tried the case on all three theories: negligence, breach of warranty and strict liability; and the trial court, at the conclusion of the trial, instructed the jury on all three theories.

The principal contention of the appellant is that the trial court erred in giving Instruction 34 on contributory negligence, which states:

"Contributory negligence is negligence on the part of a person claiming damages, which, cooperating with the negligence of another, helps in proximately causing the injury of which the foremer (sic) thereafter complains.

"You will note that in order to amount to contributory negligence, a person's conduct must be not only negligent, but also one of the proximate causes of his damages.

*"One who is guilty of contributory negligence may not recover from another for the damage suffered.*

"The reason for this rule of law is not that the fault of one justifies the fault of another, but simply that there can be no apportionment of blame and damages among the participating agents of causation." (Emphasis supplied)

*Compare:* Cal.Jury Instr. (Civil) No. 103.01 (4th ed. 1956), *with* Cal.Jury Instr. (Civil) No. 3.50 (5th ed. 1969).

This court in the recent case of Henderson v. Cominco American, 95 Idaho 690, 518 P.2d 873, October 16, 1973, has made clear that contributory negligence is a defense to a products liability action founded solely on negligence. Therein it is also made clear that Idaho is now committed to the doctrine "that contributory negligence,

at least in the sense of failure to discover a defect or to guard against its existence, is not a defense to products liability actions based on breach of warranties." *See also* Prosser, Handbook on the Law of Torts, § 103, p. 670 (4th ed. 1971); 1 Hursh, American Law of Products Liability, § 2.121, p. 382 (1961); Noel, D. W., Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk, 25 Vand.L.Rev. 93 (1972); Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791 (1966); 2 Frumer and Friedman, Products Liability, § 16.01 [3] (1972); Annotation, 4 A.L.R.3d 501 (1965).

We turn now to a consideration of Shields' cause of action founded on strict liability. Idaho to date has not accepted the doctrine of strict liability in tort in products liability actions. The early case of Abercrombie v. Union Portland Cement Co., 35 Idaho 231, 205 P. 1118 (1922), inferentially rejects the doctrine of strict liability. In that case the court stated:

"The difficulty with this position of appellant, if there were no other, is that this provision of the Idaho law applies to a contractual relation between the seller and the buyer, and appellant is not suing the seller, but the manufacturer, with whom he has had no dealings so far as the complaint discloses. The complaint in the particular mentioned is fatally defective." 35 Idaho at 234–235, 205 P. at 1119.

The recent case of Robinson v. Williamsen Idaho Equipment Co., 94 Idaho 819, 498 P.2d 1292 (1972) impeaches *Abercrombie* only to the extent of finding that in *Williamsen Idaho Equipment* there did exist privity, and, therefore, since the case turned on implied warranty and negligence, it was unnecessary to consider the issue of strict liability. The court further pointed out that analysis of strict liability would be of first impression in Idaho, regardless of the suggestion of Davis v. Wyeth Laboratories, Inc., 399 F.2d 121 (9th Cir. 1968).

The court in *Williamsen Idaho Equipment* stated:

"The facts bring the case within the rule enunciated by courts recognizing the privity doctrine, that the requirement of privity between the seller and the injured plaintiff is satisfied where the party contracting with the seller is the plaintiff's agent. Consequently, there is no lack of privity in this case which would raise an issue of strict liability apart from liability on implied warranty. This appeal therefore turns on implied warranty and on negligence." 94 Idaho at 824, 498 P.2d at 1297.

Logically and obviously we cannot evaluate the propriety of the trial court's instruction on contributory negligence as it relates to strict liability without first determining whether the doctrine of strict liability in products liability cases has been or is to be accepted in Idaho.

■ An examination of what appear to us to be the better reasoned cases leads us today to the adoption of the rule of strict liability in tort as it appears in The Restatement of the Law, Torts 2d, § 402A (1965):

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

At least 36 American jurisdictions have approved the Restatement's version of strict liability. Prosser, Handbook on the Law of Torts, *supra,* § 98, p. 656; Noel, D. W., Defective Products: Abnormal Use, Contributory Negligence, and Assumption of Risk, 25 Vand.L.Rev. 93 (1972). Strict liability in torts also appears firmly established as the prevailing view among the commentators. *See* The Restatement of the Law, Torts 2d, § 402A, Appendix (1966); Prosser, W. L., The Assault Upon the Citadel (Strict Liability to the Consumer), 69 Yale L.J. 1099 (1960); Traynor, R. J., Ways and Means of Defective Products and Strict Liability, 32 Tenn.L.Rev. 363 (1965); Products Liability—A Symposium, 19 S.W.L.J. 1 (1965); Prosser, W. L., The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791 (1966); Symposium, Products Liability: Economic Analysis and the Law, 38 U.Chi.L.Rev. 1 (1970).

■ In our opinion the better reasoned view is that contributory negligence in the sense of the failure to discover the defect or to guard against its existence is not a defense to strict liability in tort. On the other hand, it is generally agreed that contributory negligence in the sense of misuse of the product, or in the sense of voluntarily and unreasonably proceeding in the face of a known danger are good defenses to strict liability. *See* 2 Frumer & Friedman, *supra* (1972 Supp.) at pp. 67–69; Annotation A.L.R.3d, § 11, at pp. 1100–1103. Dean Prosser, the reporter for the Restatement, has stated:

"*n. Contributory negligence.* Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. *Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence.* On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery." (Emphasis supplied) Comment n., The Restatement 2d of Torts, *supra,* at p. 356.

■ Following a two week jury trial involving highly complex issues of products liability and not having had the benefit of this court's new theories of strict liability in tort and the extent to which contributory negligence is a defense thereto, it is not surprising that the trial court in Jury Instruction 34 failed to expressly limit contributory negligence and to make it inapplicable to Shields' theories of breach of warranty and strict liability. Instruction 34 correctly states the law as to products liability actions founded on negligence. However, the instruction does not indicate that the defense of contributory negligence is applicable only to the negligence theory. Hence, that instruction was undoubtedly confusing and misleading to the jury and was defective and prejudicial to plaintiff-appellant Shields.

Plaintiff-appellant also assigns error in the failure of the trial court to give certain instructions relating to his theory of breach of warranty and his theory of strict liability and the inapplicability of contributory negligence as a defense to either theory. In view of our foregoing discussion, such contentions of the appellant need no further treatment herein. It is sufficient to state that the jury instructions on retrial should clearly point out to the jury that Shields is proceeding on three theories, any one of which, if proved, is sufficient for recovery.

Our disposition of this cause makes it unnecessary for us to reach the additional assignments of error presented by appellant.

Judgment of the district court is reversed and remanded for a new trial. Costs to appellant.

McQUADE and McFADDEN, JJ., concur.

BAKES, Justice (dissenting):

I concur in that portion of the majority opinion which brings this Court in line with the majority of the jurisdictions in the United States which have adopted a doctrine of strict liability in tort in products liability actions. I further agree that contributory negligence in the sense of failure to discover the defect in a product or to guard against the possibility of its existence is not a defense to strict liability in tort as the majority opinion clearly points out. However, I cannot agree with the narrow view taken of the instructions which the majority has done.

The trial court gave 54 instructions to the jury. The first 15 were stock instructions dealing with the general statement of the case, burden of proof, and other stock housekeeping type instructions. Instructions 16 through 28 dealt with the plaintiff's theory of express and implied warranty. Instructions 29 through 40 dealt with the plaintiff's theory of negligence and the defense of contributory negligence. Instructions 41 through 46 dealt with plaintiff's theory of strict liability in tort. Instructions 47 through 52 dealt with damages, and instructions 53 and 54 dealt with electing the foreman of the jury and admonishing the jury to consider the instructions as a whole. This last-mentioned instruction read as follows:

"INSTRUCTION NO. 53

"All of the instructions are to be taken by you and considered as a whole. None of them states all of the law of the case, but all of them, when taken together, state all of the law that is to be applied to the facts in this case as the jury may find them to be." Rptr. Tr., Vol. VIII, p. 1563.

It has always been the law in this state that this Court on appeal, in reviewing the adequacy of jury instructions, will consider the instructions as a whole and not on a fragmentary basis. As stated in Blaine v. Byers, 91 Idaho 665, 429 P.2d 397 (1967), at page 674, 429 P.2d at page 406:

"The jury will be presumed to have considered the instructions as a whole; consequently, on appeal, jury instructions will not be considered piecemeal. [Cases cited]."

*See also* Davis v. Bushnell, 93 Idaho 528, 465 P.2d 652 (1970).

The majority opinion would reverse this two week long trial because the following sentence in instruction number 34, "One who is guilty of contributory negligence may not recover from another for the damage suffered," is not limited to plaintiff's theory of negligence. Instructions 34, 35 and 36 are set out below.[1] Instruc-

---

1. "INSTRUCTION NO. 34. Contributory negligence is negligence on the part of a person claiming damages, which, cooperating with the negligence of another, helps in proximately causing the injury of which the former thereafter complains.

"You will note that in order to amount to contributory negligence, a person's conduct must be not only negligent, but also one of the proximate causes of his damages.

"One who is guilty of contributory negligence may not recover from another for the damage suffered.

"The reason for this rule of law is not that the fault of one justifies the fault of another, but simply that there can be no apportionment of blame and damages among the participating agents of causation.

"INSTRUCTION NO. 35 Actual knowledge under the defense of contributory negligence is not a requirement. It is sufficient that the party allegedly guilty of contributory negligence, knew or in the exercise of reasonable care should have known of the risk that his acts or failure to act would expose him to.

"INSTRUCTION NO. 36 If you find that Shields was negligent in installing or operating the Panogen MC–R Treater or in applying the Panodrin A–13 treat, and that such negligence was a proximate cause of the resulting damage, then Shields may not recover

tions 34 and 35 are general statements of the law of contributory negligence, which the majority opinion describes as correct statements of the law. Instruction number 36 then applies the facts of this case to these general statements of law and specifically limits the application of the doctrine to Shields by stating that if Shields was negligent and if that negligence was the proximate cause of the resulting damage, "then Shields may not recover anything from anyone *on their theory of negligence.*" (Emphasis added). If the numbers to instructions 34, 35 and 36 were eliminated, and they were all combined into one instruction, it would be difficult to see how it could be argued that such an instruction advised the jury that the contributory negligence of Shields was a defense to anything other than their theory of negligence.

This conclusion is further supported by instructions 41 and 42 regarding strict liability. These instructions set out the element of plaintiff's proof and instructs the jury that the defendant Morton Chemical Co. is liable to plaintiffs for any injury suffered by them if the plaintiffs establish five things.[2] This instruction told the jury that if the plaintiffs proved each of these elements that it was entitled to recover. There is no reason to assume that the jury would ingraft other requirements or defenses into that instruction.

Perhaps the most cogent reason for holding that instruction 34, when viewed together with 35 and 36, was not erroneous, much less prejudicial, is the fact that this same argument was made to the trial court after the jury verdict in a motion for a new trial. At that time the trial court had before it the question of whether or not the handling of the instructions on contributory negligence in instructions 34, 35 and 36 created an erroneous impression in the minds of the jury. All who have spent much time trying cases to juries know that in those closing moments of a long trial, the most impressionistic event that occurs is not the intoning of instructions to a jury, but the arguments of counsel which finally put the whole case together and demonstrate to the jury why, on the law and the facts, a given result should obtain. This case was tried by extremely competent counsel which the record before both the trial court and this Court amply demonstrates. Had counsel for the defendants argued to the jury in his closing argument that contributory negligence as defined in instructions 34 and 35 was a defense to other than the plaintiff's theory of negligence as explained in instruction 36, I am sure that the motion for new trial would have included such an allegation, and the trial court, who then had the case freshly in memory, would have reacted appropriately. The record is devoid of any indication that the counsel

---

anything from anyone on their theory of negligence." Rptr. Tr., Vol. VIII, pp. 1552–1553.

2. "INSTRUCTION NO. 42 The defendant, Morton, is not required under the law so to create and deliver its product as to make it accident proof; however, it is liable to the plaintiffs for any injury suffered by them if the plaintiffs establish by a preponderance of the evidence all of the facts necessary to prove each of the following conditions:

"FIRST: The defendant placed the chemical or Panogen Treater, or both, in question on the market for use, and the defendants knew, or in the exercise of reasonable care should have known, that the particular chemical and treater, or both, would be used without inspection for defects in the particular

part, mechanism or design which is claimed to have been defective;

"SECOND: The chemical or treater, or both, were defective in design or manufacture at the time they were placed on the market and delivered;

"THIRD: The plaintiffs were unaware of the claimed defect;

"FOURTH: The claimed defect was a proximate cause of any such injury to the plaintiffs occurring while the chemical or treater, or both, were being used in the way and for the general purpose for which they were designed and intended, and,

"FIFTH: The defect, if it existed, made the chemical or treater or both, unreasonably dangerous and unsafe for their intended use on beans which plaintiffs were treating." Rptr. Tr., Vol. VIII, pp. 1556–1557.

argued the case in any other manner than as instruction 36 indicates, i. e., that the negligence of Shields only barred a recovery in Shields on its negligence theory.

This was a complex case, the trial of which took two weeks. In the press of time, neither counsel nor the trial courts can be expected to perform their functions perfectly. The law does not require it. The Supreme Court of the United States stated many years ago that a person "is entitled to a fair trial, but not a perfect one." [3] The failure to qualify that one sentence in instruction 34 can hardly be said to have made this two week trial unfair.

The problem which the majority opinion points up is really only a part of a larger problem faced by trial courts in instructing juries in cases involving inconsistent claims, which under Rule 8(e)(2) of the Idaho Rules of Civil Procedure may be joined together in one complaint. While court and counsel have little problem in dealing with multiple inconsistent legal theories, juries do not always possess the sophistication necessary to make the critical distinctions. The grouping together of instructions according to the various theories, as the trial court did in this case, is one way to help the jury cope with this problem. An even better method might be to group the instructions on a given theory together and then instruct a jury that the instructions relating to that particular theory of law, naming them by number, relate solely to the plaintiff's or defendant's particular theory, and to none other. Thus, in this case, the trial court could well have advised the jury that the plaintiff was proceeding on three separate theories which contained inconsistent proof requirements; that instructions numbers 1 through 15 and 53 and 54 applied to all of plaintiff's claims, but that instructions 16 through 28 applied only to plaintiff's warranty theories; instructions 29 through 40 applied only to plaintiff's negligence theories; instructions 41 through 46 applied only to plaintiff's strict liability theories;

and that instructions 47 through 52 applied to the issue of damages if the jury arrived at that issue. In the absence of some such approach to instruction of juries in cases involving inconsistent theories, we will no doubt be called upon regularly to do what the majority has done in this case.

DONALDSON, J., concurs.

3. Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953).